Floyd V. HENO, Plaintiff, Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant, Appellee.**

No. 92–1936.

United States Court of Appeals, First Circuit.

Argued March 22, 1994.

Decided April 22, 1994.

Robert G. Wilson IV, with whom Robert G. Wilson III and Law Offices of Robert G. Wilson III, Boston, MA, were on brief, for appellant.

Richard J. Osterman, Jr., Sr. Counsel, with whom Ann S. DuRoss, Asst. Gen. Counsel, Marta W. Berkley, Counsel, Washington, DC, Adam J. Ruttenberg, Sr. Atty., F.D.I.C., Franklin, MA, and Russell F. Conn of Conn, Kavanaugh, Rosenthal & Peisch, Boston, MA, were on brief, for appellee.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Plaintiff Floyd Heno appeals from a district court order dismissing claims for compensatory and injunctive relief brought against the Federal Deposit Insurance Corporation ("FDIC") under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). In an earlier opinion, *see Heno v. FDIC*, 996 F.2d 429 (1st Cir.1993), we affirmed the district court order dismissing the claim for injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(6), but vacated its Rule 12(b)(1) order dismissing the claim for compensatory relief. Thereafter, we granted FDIC's petition for panel rehearing on the claim for compensatory relief, *see* Fed.R.App.P. 40, and allowed further briefing, argument, and supplementation of the appellate record relating to the proper interpretation of FIRREA § 1821(d), (e), 12 U.S.C. § 1821(d), (e). We now withdraw our original opinion, and substitute the present opinion.

## I

### *BACKGROUND*

#### A. *The "Claim"*

We review a Rule 12(b)(6) dismissal *de novo,* crediting all allegations in the complaint and drawing all reasonable inferences favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Rumford Pharmacy, Inc. v. East Providence,* 970 F.2d 996, 997 (1st Cir.1992). Similarly, a Rule 12(b)(1) dismissal is reviewed *de novo* where, as here, the only issue is the legal sufficiency of undisputed jurisdictional facts. *See Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 732 (11th Cir.1982); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

The complaint alleges that Heno sold Balcol Corporation a 104–acre tract of real property in 1986, for which Balcol gave Heno a promissory note secured by a first mortgage on the undeveloped property. In September 1987, Balcol began to develop the property, known as the Prospect Heights residential subdivision, and obtained construction financing through Home National Bank of Milford ("Bank"). Heno agreed to subordinate his first mortgage to the Bank's construction loan mortgage. In return for the release of Heno's second mortgage lien as each lot was sold, Balcol and the Bank promised to release $19,125 from the sale proceeds.

By April 1990, Balcol and Prospect Heights were experiencing financial difficulties, and the three principal parties entered into a recapitalization agreement. Heno agreed to accept $5,000 (rather than $19,125) per lot for releasing his second mortgage lien on the next nine lots sold by Balcol. Balcol and the Bank agreed: (1) to transfer two additional lots to Heno (Lots 82 and 111), free and clear of the Bank's first mortgage liens, at the time Heno released his second mortgage lien on the ninth lot; and (2) to deposit the net proceeds from the nine lots in escrow with the Bank. The escrow monies were to be used exclusively for immediate

completion of roadwork in the project and to defray Balcol's first mortgage *interest* payments to the Bank.

Although Balcol conveyed Lots 82 and 111 to Heno on May 2, 1990, the Bank did not release its first mortgage liens on the lots. During April and May 1990, seven of the nine original lots were sold by the Bank after Heno had released his second mortgage liens. By June 1, 1990, more than $232,000 had been deposited in escrow with the Bank pursuant to the recapitalization agreement among Heno, Balcol, and the Bank. Ultimately, the eighth and ninth lots were sold, and the net proceeds, approximating $90,000, were deposited with FDIC.[1] The complaint alleges, hence we must assume, that $125,000 was to have been devoted to roadwork at the project.[2]

On June 1, 1990, the Bank was declared insolvent and FDIC was appointed receiver. At an unspecified later date, FDIC applied the escrow monies toward the *principal* due on Balcol's first mortgage loan account with the Bank, contrary to the express terms of the recapitalization agreement. Heno's counsel thereafter held discussions with FDIC, and was informed by Balcol that FDIC would determine, after obtaining an appraisal of the Prospect Heights project, whether to release the Bank's first mortgage liens on Lots 82 and 111, the two additional lots at issue on appeal. On December 13, 1990,[3] and again on February 19, 1991, Heno submitted written requests for action by FDIC, but to no avail.[4] Subsequently, FDIC

foreclosed on the Prospect Heights subdivision, including Lots 82 and 111. The escrow monies were neither redeposited nor applied toward the purposes agreed upon under the recapitalization agreement.

On October 18, 1991, Heno initiated the present action to enjoin FDIC's sale of Lots 82 and 111 and to compel it to redeposit the escrow monies previously misapplied to Balcol's first mortgage with the Bank. The complaint demanded an equitable accounting of the escrow monies, and compensatory relief for the loss occasioned by FDIC's refusal to release the Bank's first mortgage liens on Lots 82 and 111. FDIC moved to dismiss the claim for compensatory relief pursuant to Fed.R.Civ. 12(b)(1), and the claim for injunctive relief pursuant to Fed.R.Civ.P. 12(b)(6). The district court decided that it lacked jurisdiction to consider the claim for compensatory relief by virtue of 12 U.S.C. § 1821(d)(13)(D)(i), and that injunctive relief was precluded by 12 U.S.C. § 1821(j).

**B. *The Original Panel Opinion***

▪▪▪ FIRREA § 1821(d) regulates the filing, determination, and payment of "claims" against "assets" of failed financial institutions after FDIC has been appointed receiver. Subsections 1821(d)(3)(B) and (C) require FDIC to publish and mail notice of liquidation to "any creditor shown on the institution's books" and to allow at least ninety days for filing "claims." 12 U.S.C. § 1821(d)(3)(B), (C). As FDIC points out, anyone with a "claim" against the assets of

---

**1.** The complaint does not specify the date(s) of these sales, but the proceeds were deposited with FDIC on or about October 1, 1990.

**2.** At oral argument, Heno's counsel represented that the roadwork was never performed.

**3.** Heno's December 13 letter specifically requested release of the Bank's first mortgage liens on Lots 82 and 111 and served "notice of [Heno's] contingent interest in [the escrow account]." The letter went on to say:

Heno should receive either the lot releases or that portion of the escrow account attributable to his participation in the agreement. *Under well established fiduciary and equitable principles, if the FDIC is not going to honor the purposes of the escrow account, that portion of the escrow account attributable to Heno's participation should be returned to him, and not*

*used by the Receiver to reduce Balcol's obligation.*

(Emphasis added.) Heno's complaint demands an equitable accounting of the escrow monies, and, accordingly, does not specify the exact amount claimed. However, were Heno to establish a repudiation of the recapitalization agreement, he could be expected to assert a claim for the difference between the $19,125 originally agreed upon, and the $5,000 he later agreed to accept under the recapitalization agreement for releasing his second mortgage liens on the nine lots sold by Balcol (or approximately $127,000).

**4.** The February 19, 1991, letter outlines, among other things, the evidence relating to Heno's interest in the escrow monies and certain subdivision lots, and makes reference to additional letters not included in the appellate record.

the failed institution must submit an administrative claim to FDIC within the prescribed statutory period. *Id.* § 1821(d)(5)(C). "[P]articipation in the administrative claims review process [is] mandatory for all parties asserting claims against failed institutions...." *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir.1992). Failure to participate in the administrative claims review process (hereinafter "ACRP") is a "jurisdictional bar" to judicial review. *Id.; see also* 12 U.S.C. § 1821(d)(13)(D); *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir.1991) ("Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are [sic] made outside the procedure set forth in section 1821.").[5] The subsection 1821(d) bar date for filing administrative claims in the present case was September 6, 1990. Since neither letter detailing Heno's "claims" predated the bar date, *see supra* notes 3 and 4, the district court ruled that Heno could no longer file a timely administrative claim under subsection 1821(d), and that his "claims" therefore were not entitled to judicial review.

Heno consistently has advanced two contentions on appeal. First, he argues that neither FIRREA § 1821(j), *see infra* note 8, nor the ACRP established under subsection 1821(d), applies to "non-creditors"—including Heno—who assert claims to property, such as the alleged escrow account, which, though held *by* the failed bank, is held "in trust" for third parties and is not a bank "asset."[6] *See, e.g., Purcell v. FDIC (In re Purcell )*,

141 B.R. 480 (Bankr.D.Vt.1992), *aff'd,* 150 B.R. 111, 113–15 (D.Vt.1993). Second, and in the alternative, Heno contends that his claim for compensatory relief should not have been dismissed for failure to comply with the administrative claim procedure established under subsection 1821(d).

The "task of interpretation begins with the text of the statute itself, and statutory language must be accorded its *ordinary meaning.*" *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 706 (1st Cir. 1992) (interpreting FIRREA § 1821(j)) (emphasis added) (citations omitted). The original panel opinion rejected FDIC's contention that Heno was required to file an administrative claim *before* the bar date even though the "claim" was grounded in a *pre-receivership* agreement with the Bank and remained executory and unrepudiated both at the time of FDIC's appointment and throughout the entire 90–day bar period prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(i). As our opinion pointed out, FIRREA § 1821(d) prescribes a single exception to the pre-bar date filing requirement: it permits late-filed claims *only if* "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and ... such claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii). Because Heno—no doubt like many others who assert claims arising out of executory contracts with a failed bank—concededly had actual notice of FDIC's appointment, but held *no* assertable

---

**5.** Section 1821(d)(13)(D) provides:

**(D) Limitation on judicial review**
 Except as otherwise provided in this subsection, no court shall have jurisdiction over—
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
12 U.S.C. § 1821(d)(13)(D).

**6.** At reargument, Heno urged that § 1821(d)(13)(D) be ruled wholly inapplicable for this reason, suggesting that the issue is ripe for

appellate review because it might affect any later district court decision as to the scope of Heno's damages remedy. We decline the invitation for two reasons. First, given FDIC's blanket concession at reargument, the "asset" issue is no longer essential to proper resolution of the question of appellate jurisdiction. Second, the district court has yet to make findings as to whether (or which) Bank records may have been lost. On remand, therefore, Heno may confront a serious problem of proof. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *see also* 12 U.S.C. § 1823(e). Thus, though the *D'Oench Duhme* document requirement is not jurisdictional, and Heno will be entitled to reasonable discovery, *see generally Tuxedo Beach Club Corp. v. City Fed. Sav. Bank*, 749 F.Supp. 635, 644 (D.N.J.1990), he may not be able to overcome certain FDIC defenses which could obviate any issue relating to damages.

or provable "claim" until *after* the bar date, the original panel opinion reasoned that the ACRP established under subsection 1821(d) rationally could not have been intended to preclude judicial review of post-receivership "claims" which *arise after* the expiration of the 90–day administrative-claim filing period. Rather, inasmuch as FDIC received two post-bar date requests from Heno that it either affirm or repudiate the alleged reaffirmation agreement within a "reasonable period following [FDIC's] appointment," *see* 12 U.S.C. § 1821(e)(2); *supra* notes 3 and 4, we held Heno's claim for contract repudiation subject instead to the more flexible time constraints established in FIRREA § 1821(e). *See, e.g., Ceguerra v. Secretary of Health and Human Servs.,* 933 F.2d 735, 742 (9th Cir.1991) ("[W]hen an administrative agency interprets its governing statute to require such an absurd result, we owe that interpretation no deference.")[7]

### C. *The Petition for Rehearing*

The petition for rehearing represents that but for the fact that these claims were never considered claims based on contract repudiation, FDIC would have invoked its *extant* internal agency manual procedures for processing such post-bar date claims (hereinafter: "internal manual procedures"). Accordingly, FDIC urged remand to permit the district court to determine whether Heno had complied with the internal manual proce-

dures first disclosed in FDIC's petition for rehearing. At reargument, FDIC withdrew its request for remand, as unnecessary, after conceding that Heno's detailed letter requests to FDIC in December 1990 and February 1991, *see supra* notes 3 and 4, placed FDIC on notice of the existence and nature of Heno's post-bar date claims well within the time allotted under FDIC's internal manual procedures.

## II

### *DISCUSSION*

Given the concession that Heno's post-bar date claims were timely filed under FDIC's internal manual procedures, the one remaining question is whether judicial deference is due the FDIC interpretation of subsections 1821(d)(5)(C)(ii) and 1821(d)(13) implicit in its internal manual procedures.[8]

The guidelines governing deference to an administering agency's interpretation of its enabling statute are well settled:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at

7. Subsection 1821(e) provides, in pertinent part:
 **(e) Provisions relating to contracts entered into before appointment of conservator or receiver**
 **(1) Authority to repudiate contracts**
 In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
 (A) to which such institution is a party;
 (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
 (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.
 **(2) Timing of repudiation**
 The conservator or receiver appointed for any insured depository institution in accor-

dance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

8. We need not reconsider our earlier holding that the district court lacked jurisdiction over Heno's claim for injunctive relief, a claim expressly barred by § 1821(j), which provides in part:

 Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, *to restrain or affect the exercise of powers or functions* of the Corporation *as a conservator or a receiver.*
 12 U.S.C. § 1821(j) (emphasis added); *see Telematics Int'l,* 967 F.2d at 707 ("holding that the district court lacks jurisdiction to *enjoin* FDIC when FDIC is acting pursuant to its statutory powers as receiver") (emphasis added).

issue, the court does not simply impose its own construction on the statute, *as would be necessary in the absence of an administrative interpretation.* Rather, if the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (emphasis added). Under the statutory interpretation implicit in its internal manual procedures, FDIC construes the pivotal statutory bar-date exception in subsection 1821(d)(5)(C)(ii)—"the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the bar] date"—as permitting late filing *even by claimants who were on notice of FDIC's appointment* but could not file their claim because it did not come into existence until after the bar date prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(i).

Although we concur in FDIC's candid assessment that its proposed interpretation is far from the most natural reading of subsection 1821(d)(5)(C)(ii) itself, we cannot say that it does not represent a "permissible" reading of an ambiguous provision viewed in the broader context of the statute as a whole under the deferential standard required by *Chevron. See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782 (agency construction is "permissible" unless "arbitrary, capricious, or *manifestly* contrary to the statute") (emphasis added). In this vein, neither we nor the parties have found any other FIRREA provision governing *agency treatment* of claims that do not arise until more than 90 days after the claimant has notice of FDIC's appointment as receiver. Additionally, Congress has delegated to FDIC the authority to "prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination." 12 U.S.C. § 1821(d)(4). The extant FDIC internal manual procedures applicable to Heno's claims comport with the FDIC's interpretation of subsection 1821(d)(5)(C)(ii), by explicitly *dispensing* with any requirement—intrinsic to the pre-bar date ACRP—

that holders of post-bar date claims establish that they had no actual or constructive notice of FDIC's appointment. *Compare infra* Appendix, Exhibits G and 4–F *with* Exhibit 5–K.

■ Further, FDIC advances sound policy grounds for affording it an opportunity to evaluate post-bar date claims in the first instance, including contract repudiation claims that do not arise within the initial ninety-day period following notice of its appointment as receiver. For one thing, a reasonably designed and fairly administered post-bar date ACRP should optimize prospects for expeditious resolution of these claims against failed banks, make maximum use of FDIC's cumulative administrative expertise, and minimize burdensome litigation in the federal courts. *See Marquis,* 965 F.2d at 1152 ("Quite plainly, Congress intended the ACRP to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation.") (citing H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., at 418–19 (1989) U.S.Code Cong. & Admin.News pp. 86, 214, 215). Lastly, absent a clear signal from Congress to the contrary, we must credit an administering agency's reasoned interpretation of its enabling statute. *See Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11 (noting that judicial deference is not dependent on a determination "that the agency construction was the *only* one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial setting"); *see also FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 439, 106 S.Ct. 1931, 1938, 90 L.Ed.2d 428 (1986) (according *Chevron* deference to established FDIC administrative practice, even though FDIC had not yet reduced its statutory interpretation to "specific regulation"); *cf. Colorado ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.,* 926 F.2d 931, 944 (10th Cir.1991) ("[T]he RTC's expert 'judgments about the way the real world works ... are precisely the kind that agencies are better equipped to make than the courts.'") (citation omitted).

Since FDIC concedes that its treatment of Heno's administrative requests that his al-

leged capitalization agreement with the Bank be assumed by FDIC was tantamount to administrative review under FDIC's internal manual procedures,[9] and consequently that the district court had jurisdiction to review Heno's claims, we have no occasion to determine the sufficiency of FDIC's internal manual procedures. These matters must await some future occasion when FDIC asserts a jurisdictional bar to judicial review under FIRREA § 1821(d)(13)(D) based on a claimant's alleged failure to comply with the internal manual procedures.

At the same time, however, we note that though amply invested with rulemaking authority to promulgate regulations under subsection 1821(d)(4), FDIC has not done so, nor has it taken reasonable steps to forewarn potential claimants of the *existence* of its internal manual procedures for filing "late" claims, thus contributing indispensably to the convoluted travel of this case. *Cf., e.g., Lawson v. FDIC*, 3 F.3d 11, 14 (1st Cir.1993) (noting that FDIC's "litigating style has some role in [creating] confusion" in the district courts).[10] Accordingly, the FDIC internal manual procedures are appended to this opinion, *see infra* Appendix, to lessen the likelihood that future claimants experience a similar ordeal.

*The district court order dismissing appellant's claims for compensatory relief is vacated. The case is remanded to the district court for further proceedings consistent with this opinion. In all other respects, the district court order is affirmed. Finally, the present opinion is to be substituted for our original opinion published at 996 F.2d 429. So ordered.*

## APPENDIX

### EXHIBIT 1

Revised Exhibit 5–K.

**9.** We expressly refrain from considering whether the administrative "mistake" conceded by FDIC lay in its failure to notify Heno of its post-bar date ACRP within 30 days after it received the December 1990 and February 1991 letters, *i.e.*, after the dates of FDIC's "discovery" of Heno's claims, or whether Heno's letters were proper administrative claims implicitly "disallowed" when FDIC failed to respond within 180 days after their receipt.

FORM: NOTICE TO CREDITOR TO FILE A CLAIM; CREDITOR NOT APPEARING IN BOOKS AND RECORDS AND/OR DISCOVERED AFTER INITIAL PUBLICATION NOTICE AND [sic] HAS BEEN SENT

Use: Upon discovery of a claimant not appearing on the institution's books and records, a similar notice is to be sent within 30 days of discovery of creditor under 12 U.S.C. § 1821(d)(3)(C)(ii). Use for claims which do not appear on the institution's books and are discovered after the appointment of the receiver and initial publication notice and letters to creditors have already been sent. This form should also be utilized for claims discovered after expiration of the bar date.

Complete Affidavits of Mailing, modified to indicate creditor(s) discovered after closing and initial notices.

[DATE]

[NAME OF CLAIMANT]

[ADDRESS]

SUBJECT: FIN—Name of Financial Institution City, State—in receivership *NOTICE TO DISCOVERED CREDITOR OR CLAIMANT—PROOF OF CLAIM*

Dear Sir/Madam:

On [date of appointment], the [name of financial institution] located at [full street address of main office] was closed by [the supervisory authority], and the Federal Deposit Insurance Corporation was appointed Receiver. Notice of the appointment of the receiver has been published as required by law.

**10.** For example, as recently as reargument, FDIC continued to urge a remand for administrative exhaustion, finally conceding its "mistake" in failing to apply its internal manual procedures to Heno's claim only when it was pressed to explain the utility of such a remand.

The Receiver has discovered that you may have a claim against the [name of financial institution] or the Receiver.

By published notice, the Receiver has established [bar date] as the last date for filing claims (the "bar date"). Under applicable law, the Receiver must disallow claims which are not filed by the bar date, *except* the Receiver may consider a claim filed after the bar date if it is shown that the claimant did not receive notice of the appointment of the receiver in time to file such claim before the bar date, and such claim is filed in time to permit payment of the claim.

It is within the sole discretion of the receiver whether to consider claims which are filed after the bar date.

If you wish to file a claim, please complete and sign the enclosed Proof of Claim Form. If your claim is for more than $500, your claim form must be signed and sworn to before a notary public. If you believe that you did not have notice of the appointment of the receiver in time to file your claim by the bar date, then you must also file a written statement specifying any facts or circumstances demonstrating that you did not have knowledge of the appointment of the Receiver in time to file your claim by the bar date. Please include any documentation supporting your claim and your lack of knowledge of the appointment of the Receiver.

### MAILING YOUR CLAIM

Please mail your Proof of Claim form and written statement to:

Claims Agent
Federal Deposit Insurance Corporation
Receiver of *Name of Failed Institution*
c/o Federal Deposit Insurance Corporation
*Address*
*City, State, Zip Code*

### HAND–DELIVERING YOUR CLAIM

You may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays).

[address for hand-delivery]

If you are filing your claim after the bar date, and you wish the receiver to consider your claim, your Proof of Claim form and written statement must be *POSTMARKED OR HAND–DELIVERED TO (AND RECEIVED BY)* the Receiver no later than 90 days from the date or post-mark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek judicial determination of your claim, you must file a lawsuit (or continue any prior pending lawsuit) on your claim, *within 60 days after the later of the date or postmark of any notice of disallowance,* in the United States District Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred.

If you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. § 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain judicial determination of your claim, you must file your suit *within 60 days after the expiration of the 180 day period* in the United States District Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred.

The statutory provisions governing this claims process are found in section 1821(d)(3)–(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at [contact phone number].

Sincerely,
Claims Agent(s)
Federal Deposit Insurance Corporation,
as Receiver for [name of financial institution]

Revised Exhibit 4–F. FDIC–DAS Settlement Procedures Manual Sample Disaffirmance Letter

Certified Mail
Return Receipt Requested

Date

Name
Address
City, State, Zip Code

Subject: FIN #, Name of Closed Financial Institution City, State—In Receivership Account # (Reference, etc.)

*CONTRACT DISAFFIRMANCE*

To Whom It May Concern:

On [date of appointment] the [name of failed institution], in [city and state], was closed by the [supervisory authority] and the Federal Deposit Insurance Corporation was appointed Receiver ("Receiver"). Under applicable federal law the Receiver is responsible for winding up the affairs of [name of failed institution] as quickly as possible. To achieve this goal the Receiver has the right, pursuant to 12 U.S.C. § 1821(e), to disaffirm contractual obligations of the failed institution.

The purpose of this letter is to advise-you [sic] that the Receiver has elected to disaffirm the above-referenced contract.

* Arrangements may be made to pick up any leased equipment by contacting (Name) at (telephone number).

If you believe that you have any claim against the Receiver resulting from this action, you may file a proof of claim with the Receiver, using the enclosed form, and the Receiver must receive it on or before [90 days] from the date or post-mark [sic] of this letter, whichever is later. If your claim is for more than $500, your claim form must be signed and sworn to before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM ON OR BEFORE [90 days] FROM THE DATE OR POST–MARK [SIC] OF THIS LETTER, WHICHEVER IS LA- TER, WILL RESULT IN THE DISAL- LOWANCE OF YOUR CLAIM.

Please mail your Proof of Claim form to:

Claims Agent
Federal Deposit Insurance Corporation
Receiver of *Name of Failed Institution*
c/o Federal Deposit Insurance Corporation
*Address*
*City, State, Zip Code*

Or you may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays).

Your Proof of Claim form must be *POST-MARKED OR HAND–DELIVERED TO (AND RECEIVED BY)* the Receiver on or before the [90 days] from the date or post-mark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek a judicial determination of your claim, you must file suit (or continue any prior pending suit) on your claim, *within 60 days after the later of the date or postmark of any notice of disallowance,* in the United States District Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred.

You are further advised that if you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. § 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain de novo adjudication, you must file your suit within 60 days after the expiration of the 180 day period in the United States District Court for the district in which [name of financial institution]'s principal place of business was locat-

ed or in the United States District Court for the District of Columbia or your claim will be barred.

The statutory provisions governing this claims process are found in section 1821(d)(3)–(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at [contact phone number].

Very truly yours,
Name
Title
Federal Deposit Insurance Corporation, as Receiver for [name of financial institution]

(Refer to site policy for signature guidelines)
cc: Refer to site policy for copy distribution guidelines.

*(Use only if applicable)

Revised Exhibit G. FDIC–DAS Settlement Procedures Manual Sample Disaffirmance on Prepaid Contract Letter

Certified Mail
Return ·Receipt Requested

 Date

Name
Address
City, State, Zip Code

Subject: FIN #, Name of Closed Financial Institution City, State—In Receivership Account # (Reference, etc.)

CONTRACT DISAFFIRMANCE AND RE-QUEST FOR RETURN OF PREPAID *FUNDS*

To Whom It May Concern:

On [date of appointment] the [name of failed institution], in [city and state], was closed by the [supervisory authority] and the Federal Deposit Insurance Corporation was appointed Receiver ("Receiver"). Under applicable federal law the Receiver is responsible for winding up the affairs of [name of failed institution] as quickly as possible. To achieve this goal the Receiver has the right, pursuant to 12 U.S.C. § 1821(e), to disaffirm contractual obligations of the failed institution.

The purpose of this letter is to advise you that the Receiver has elected to disaffirm the above-referenced contract.

An examination of your prepaid contract revealed that there are _____ unused days remaining from the date of this notice until the expiration of said contract. The number of days multiplied by $_____ per day, would indicate a credit of $_____. It is requested that you forward a check made payable to the FDIC, as Receiver of (Name of closed Financial Institution), for the aforementioned credit to:

Federal Deposit Insurance Corporation
Receiver of *Name of Failed Institution*
c/o Federal Deposit Insurance Corporation
*Address*
*City, State, Zip Code*
Attention: [Name]

*Arrangements may be made to pick up any leased equipment by contacting (Name) at (telephone number).

If you believe that you have any claim against the Receiver resulting from this action, you may file a proof of claim with the Receiver, using the enclosed form, and the Receiver must receive it on or before [90 days] from the date or post-mark [sic] of this letter, whichever is later. If your claim is for more than $500, your claim form must be signed and sworn to before a Notary Public. YOUR FAILURE TO TIMELY FILE YOUR CLAIM ON OR BEFORE [90 days] FROM THE DATE OR POST–MARK [sic] OF THIS LETTER, WHICHEVER IS LATER, WILL RESULT IN THE DISALLOWANCE OF YOUR CLAIM.

Please mail your Proof of Claim form to:

Claims Agent
Federal Deposit Insurance Corporation
Receiver of *Name of Failed Institution*
c/o Federal Deposit Insurance Corporation
*Address*
*City, State, Zip Code*

Or you may hand-deliver your Proof of Claim form to the Claims Agent at the address stated herein between 8:00 a.m. and 5:00 p.m. on weekdays (excluding federal holidays).

Your Proof of Claim form must be *POST-MARKED OR HAND–DELIVERED TO (AND RECEIVED BY)* the Receiver on or before the [90 days] from the date or postmark [sic] of this letter, whichever is later.

Upon receipt of your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim. If the Receiver notifies you of the disallowance of your claim, and you wish to seek a judicial determination of your claim, you must file suit (or continue any prior pending suit) on your claim, *within 60 days after the later of the date or postmark of any notice of disallowance,* in the United States District Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred.

You are further advised that if you do not receive a notice of disallowance of your claim within 180 days of its filing with the Receiver and the Receiver and you have not agreed, in writing, to extend the initial 180 day determination period, your claim will be deemed disallowed, pursuant to 12 U.S.C. § 1821(d)(6)(A). If this occurs and you wish to file suit on your claim to obtain de novo adjudication, you must file your suit within 60 days after the expiration of the 180 day period in the United States District Court for the district in which [name of financial institution]'s principal place of business was located or in the United States District Court for the District of Columbia or your claim will be barred.

The statutory provisions governing this claims process are found in section 1821(d)(3)–(13) of Title 12 of the United States Code.

If you have any questions please contact [contact name] at [contact phone number].

Very truly yours
Name
Title
Federal Deposit Insurance Corporation, as Receiver for [name of financial institution]

(Refer to site policy for signature guidelines) cc: Refer to site policy for copy distribution guidelines. *(Use only if applicable)

*(Use only if applicable)