RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TINA ZAI, individually and as a Trustee of her Children's Trusts; Stretford, Ltd.,

  *Plaintiffs-Appellants*,

  *v.*

NATIONAL CREDIT UNION ADMINISTRATION BOARD, acting in its capacity as Liquidating Agent for the St. Paul Croatian Federal Credit Union,

  *Defendant-Appellee*.

⎤
⎟
⎟
⎟
⎟
> No. 24-3909
⎟
⎟
⎟
⎟
⎦

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-02006—John R. Adams, District Judge.

Argued: July 29, 2025

Decided and Filed: August 11, 2025

Before: THAPAR, NALBANDIAN, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Lawrence R. Acton, MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA, Cleveland, Ohio, for Appellants. Samuel J. Lauricia III, WESTON HURD, Cleveland, Ohio, for Appellees. **ON BRIEF:** Lawrence R. Acton, MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA, Cleveland, Ohio, for Appellants. Samuel J. Lauricia III, Walter A. Lucas, Matthew C. Miller, WESTON HURD, Cleveland, Ohio, for Appellees.

_____

**OPINION**

_____

THAPAR, Circuit Judge.    St. Paul Croatian Federal Credit Union collapsed in 2010. After taking control of the failed credit union, the National Credit Union Administration Board sued Tina Zai and her husband, seeking to recover tens of millions of dollars they owed to St. Paul.  Zai ultimately settled that lawsuit.

Now, over a decade later, Zai has filed a new case against the Board.  She alleges that the Board breached the settlement agreement that resolved the first lawsuit.

But the merits of her case aren't before us.  Instead, this case turns on a jurisdictional question:  does Zai's lawsuit belong in federal court?  Because it does, we vacate the district court's judgment dismissing the case.

I.

St. Paul Croatian Federal Credit Union was a federally chartered credit union headquartered in northeast Ohio.  It is now defunct.  In 2010, St. Paul's federal regulator—the National Credit Union Administration Board—determined that St. Paul was insolvent.  So the Board closed St. Paul and placed it into liquidation.  12 U.S.C. § 1787(a)(1)(A).  The Board also appointed itself as the liquidating agent responsible for winding down St. Paul's affairs.  *See id.*

In an effort to recover money for St. Paul's creditors, the Board sued Eddy Zai; a slew of entities he controlled, collectively known as the Cleveland Group; and his wife, Tina Zai.  The Board alleged that the Zais owed St. Paul tens of millions of dollars.[1]  The Zais eventually reached an agreement with the Board to settle that lawsuit for $22,000,000.

---

[1]In fact, Eddy Zai committed large-scale fraud against St. Paul.  In November 2012, he pled guilty to federal criminal charges of conspiracy, bank fraud, bank bribery, money laundering, and making false statements to a financial institution.  Plea Agreement, *United States v. Zai*, No. 12-cr-00071 (N.D. Ohio Nov. 5, 2012), Dkt. No. 112, Pg. ID 882–83.  Eddy Zai was sentenced to 87 months in prison for these crimes.  Judgment in a Criminal Case, *Zai*, No. 12-cr-00071, Dkt. No. 169, Pg. ID 2155; *see also United States v. Zai*, No. 22-3371, 2022 WL 17832201, at *1 (6th Cir. Dec. 21, 2022).

But the settlement agreement didn't call for an ordinary cash payment. One of Eddy Zai's Cleveland Group companies was the beneficiary of a promissory note that entitled it to payments from another company. To pay the sum they owed under the settlement agreement, the Zais caused the Cleveland Group company to transfer its promissory note to the Board, so that the Board could collect $22,000,000 in payments under the note. For its part, the Board agreed that once it had collected $22,000,000 in payments from the promissory note, it would transfer the note to Tina Zai. Based on the parties' settlement, the district court dismissed the lawsuit in 2014.

Fast forward to the present. Now, Tina Zai alleges that the Board breached the settlement agreement. She claims that the Board refused to transfer the promissory note to her on time, even though the Board had already collected more than $22,000,000 in payments from the note. (The Board says it complied with the agreement.) To enforce this alleged breach of the settlement agreement, Zai filed this lawsuit in federal court.[2] She brings claims against the Board for breach of contract and unjust enrichment.

The district court dismissed the case. It didn't reach the merits of Zai's claims that the Board breached the settlement agreement. Instead, it dismissed for lack of jurisdiction. Zai appealed that decision.

## II.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may only hear certain kinds of lawsuits that are "authorized by Constitution and statute." *Id.* A federal court must presume that a lawsuit falls outside its limited subject-matter jurisdiction until the party who wants to be in federal court shows otherwise. *Id.*

Here, the jurisdictional analysis has two main parts. First, does a federal statute provide an affirmative basis for subject-matter jurisdiction? Second, if so, does a jurisdiction-stripping

---

[2]An entity named Stretford, Ltd., is the other plaintiff in this lawsuit. The record contains few details about this company. For simplicity, we refer to the plaintiffs as "Zai."

provision of the Federal Credit Union Act nevertheless deprive the federal courts of authority to hear this case?

## A.

This case falls within the plain terms of a statutory jurisdictional grant. Under a provision of the Federal Credit Union Act, federal district courts "have original jurisdiction" over "[a]ll suits of a civil nature" to which the Board, in its capacity as liquidating agent of a federally chartered credit union, is a party. 12 U.S.C. § 1789(a)(2). That's this case: Zai is suing the Board in its capacity as liquidating agent of St. Paul, a federally chartered credit union. So unless the Federal Credit Union Act's jurisdiction-stripping provision applies, the district court had jurisdiction over this case.

## B.

The Board doesn't contest the statutory grant, but instead points to a provision of the Federal Credit Union Act that it says deprives federal courts of jurisdiction over this case. *See* 12 U.S.C. § 1787(b)(13)(D). This provision specifies that "no court shall have jurisdiction over" (i) any claim that seeks payment from the assets of the credit union (or from the Board acting in its capacity as liquidating agent of the credit union) or (ii) "any claim relating to any act or omission of" the credit union or the Board in its capacity as liquidating agent. *Id.*

## 1.

Before diving into the text of that provision, some background is in order. Recall that the defendant here, the National Credit Union Administration Board, appointed itself as the liquidating agent of the St. Paul Croatian Federal Credit Union. Under the Federal Credit Union Act, that appointment gives the Board the power to resolve any claims that creditors may have against the assets of St. Paul. *Id.* § 1787(b)(3)(A). Once the Board takes over a defunct credit union, it must "promptly" notify creditors that they need to present their claims against the credit union to the Board. *Id.* § 1787(b)(3)(B)–(C). And when the Board publishes its notice, it must establish a deadline by which creditors must file their claims. *Id.* § 1787(b)(3)(B)(i). The deadline must come no earlier than 90 days from the date of the published notice. *Id.*

When a creditor files a claim, the Board must determine whether to approve or deny it. *Id.* § 1787(b)(5). The requirement to present a claim to the Board is often called an administrative-exhaustion requirement. *Perna v. Health One Credit Union*, 983 F.3d 258, 270 (6th Cir. 2020). If the Board denies a claim, the creditor may seek judicial review of the Board's decision through one of the routes specified in the statute. 12 U.S.C. § 1787(b)(6)(A)(ii), (7)(A). But apart from those routes, the statute provides that "no court shall have jurisdiction over" any claim that (i) seeks payment from the assets of the credit union (or from the Board acting in its capacity as liquidating agent of the credit union) or (ii) "any claim relating to any act or omission of" the credit union or "the Board as liquidating agent." *Id.* § 1787(b)(13)(D); *see also Perna*, 983 F.3d at 266.

Adding this all up, the statute's administrative-exhaustion and jurisdiction-stripping provisions work in tandem. Creditors must go through the Board's internal procedures before they may bring their claims to court. And if a claimant fails to exhaust the Board's internal administrative remedies, then a court won't have the power to hear his claim.

Crucially, the statute's exhaustion provisions don't cover all potential claims that could be brought against the Board. When the statute doesn't require a claim to be exhausted, the jurisdiction-stripping provision logically doesn't apply to that claim. *See Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 385 (6th Cir. 2008).

In *Village of Oakwood*, our court analyzed a materially identical jurisdiction-stripping provision of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).[3] FIRREA's jurisdiction-stripping provision, the court explained, is not "an absolute bar to jurisdiction" for all claims that arise under the Act; rather, the provision only bars jurisdiction for those claims that are subject to FIRREA's "statutory exhaustion requirement." *Id.* (quotation omitted). If the rule were otherwise, the statute would "foreclose judicial jurisdiction altogether" over many claims. *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998). That's

---

[3]*Compare* 12 U.S.C. § 1821(d)(13)(D) (FIRREA's jurisdiction-stripping provision), *with id.* § 1787(b)(13)(D) (FCUA's jurisdiction-stripping provision). As this court has said before, these provisions are "nearly identical." *Perna*, 983 F.3d at 270. What's more, FIRREA's broader claims-processing framework parallels the claims-processing framework found in the Federal Credit Union Act. *Id.* For that reason, this court has turned to FIRREA cases when interpreting the FCUA. *Id.* We do the same today.

"certainly not the goal" of the statute, since many of these claims arise from contractual disputes that have historically made up the bread and butter of judicial business. *Id.* And reading the administrative-exhaustion and jurisdiction-stripping provisions as "apply[ing] to the same 'claims'" gives the statute its most "plausible" meaning. *Id.* at 1200–01. Thus, FIRREA's jurisdictional bar only applies to claims that must be exhausted under the statute.

In holding that the jurisdictional bar and the exhaustion requirement are coextensive, our court joined every court of appeals to have considered the issue. *Village of Oakwood*, 539 F.3d at 385. Indeed, courts interpreting FIRREA's jurisdiction-stripping provision have "universally concluded that it bars only claims that could be brought under the administrative procedures" of FIRREA. *Willner v. Dimon*, 849 F.3d 93, 105–06 (4th Cir. 2017) (cleaned up); *accord Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1142 (D.C. Cir. 2011) (Sentelle, C.J.); *Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843, 850 (3d Cir. 1994).

Simply put, the Federal Credit Union Act only strips courts of jurisdiction over claims that must be presented to the Board in the first place. 12 U.S.C. § 1787(b)(13)(D).

2.

So, the question becomes: Did Zai bring a claim that the Federal Credit Union Act required her to present to the Board? She didn't.

Start with the fact that the original deadline the Board established for creditors to file claims against St. Paul expired over a decade ago, in August 2010. But Zai's claim didn't accrue until many years later. Indeed, the settlement agreement on which Zai's claim is based didn't even exist until 2013. And the breach allegedly occurred no earlier than 2018.

Under these circumstances, the Federal Credit Union Act doesn't require administrative exhaustion of Zai's claim. There's only one claims-processing period, which lasts until the Board's chosen deadline. *See id.* § 1787(b)(3)(B)(i). Logically, this deadline cannot apply to claims that arise *after* the deadline expires. And the statute doesn't establish any procedure for administratively exhausting those kinds of late-arising claims. Thus, the term "claim," as used

throughout the statute's administrative-exhaustion provisions, must refer only to those claims that accrue within the Board's claims-processing window.[4]

The statutory structure of the Federal Credit Union Act supports this interpretation. The critical statutory provision that enforces the Board's claims-processing deadline is 12 U.S.C. § 1787(b)(5)(C)(i). Under that provision, if a creditor files his claim after the deadline specified by the Board, that claim "shall be disallowed," and "such disallowance shall be final." *Id.* § 1787(b)(5)(C)(i). But there's an exception for any claimant "who did not receive notice of the appointment of the liquidating agent in time to file [his] claim" before the deadline, so long as that claimant eventually files in time to allow the Board to pay the claim. *Id.* § 1787(b)(5)(C)(ii). In other words, if a claimant doesn't know that the Board took over as liquidating agent, the Board's deadline doesn't apply to that claimant. Here, however, Zai had notice of the Board's appointment as liquidating agent as soon as that appointment became effective. So she wouldn't be able to take advantage of that exception. She'd be out of luck if that exception were the only avenue for relief.

But ultimately, the language of this exception shows that the statute's general bar on late claims applies only to creditors who had claims that could have been processed within the Board's deadline. Why? It doesn't make sense to ask whether Zai had notice of the Board's appointment as liquidating agent in time to file her "claim" before the deadline, because she didn't yet *have* a claim. *See id.* § 1787(b)(5)(C)(ii)(I). Put differently, the general bar on late claims is focused exclusively on creditors who actually *have* claims at the time. And the statute carves out an exception for a certain subset of those creditors—those who had a claim at the time but didn't know about the liquidating agent's appointment. *Id.* § 1787(b)(5)(C)(ii).

In sum, there are three types of creditors: (1) those who had a claim and knew about the liquidating agent's appointment (Claimant A); (2) those who had a claim and didn't know about

---

[4]*See* 12 U.S.C § 1787(b)(3)(B)(i) (creditors must submit "claims" by the Board's specified deadline); *id.* § 1787(b)(5)(A)(i) (Board has 180 days to either allow or disallow a "claim" filed with the Board); *id.* § 1787(b)(5)(C)(i) (all "claims" filed after the Board's specified deadline are disallowed, unless the creditor lacked notice of the Board's appointment); *id.* § 1787(b)(6)(A) (judicial or further administrative review is available once the Board disallows a "claim"); *id.* § 1787(b)(13)(D) (no court shall have jurisdiction over any "claim" that doesn't go through the administrative-exhaustion process).

the liquidating agent's appointment (Claimant B); and (3) those who didn't have a claim before the claims-processing window closed (Claimant C).

If Claimant A doesn't file in time, the statute bars judicial review because the administrative-exhaustion requirement applies. (Remember, the jurisdiction-stripping provision applies to claims that must first be presented to the Board.)  But because Claimant B wasn't aware of the liquidating agent, the statute gives him a grace period to file.  And then there is Claimant C.  It is impossible for Claimant C to file in the statutory period because his claim has not yet accrued.  And that, in turn, means Claimant C is not subject to the statute's exhaustion requirements and may file suit in court.

Other parts of the Federal Credit Union Act bolster this reading.  For example, the statute refers to a "routine claims process."  *Id.* § 1787(b)(8)(A).  As discussed above, the "routine claims process" includes an administrative-exhaustion scheme and requires the Board to rule on timely claims.  *See id.* § 1787(b)(5)(A), (C)(i).  The statute then contrasts that "routine process" with a special, expedited process for reviewing claims that allege the existence of a perfected security interest.  *Id.* at § 1787(b)(8)(A)(i).  These provisions reveal that the statute's exhaustion requirements are all part of one single process—"the routine process"—that corresponds to the deadline published by the Board.

More importantly, this "process" doesn't have a mechanism to address claims that arise after the process ends.  Although the statute establishes a special process outside the single "routine process" for one specific set of claims—those alleging a perfected security interest—the statute doesn't establish a similar process for exhausting claims that arise *after* the closure of "the routine process."  This silence speaks volumes:  claims that arise after "the routine process" simply aren't subject to any internal process in the first place.

Finally, this interpretation coheres with the liquidation scheme that Congress established.  Creditors who loaned money to the credit union before its insolvency and want to recover must go through the statute's administrative-exhaustion requirements.  Same with claimants disputing actions by the Board—like firing employees and repudiating contracts—that the Board takes within the first few months of its role as liquidating agent, while the claims-processing window

remains open.  *Cf. Perna*, 983 F.3d at 266 (Board repudiated employee's contract on the same day it took over as the conservator of a state-chartered credit union).  This means that most creditors' claims against the credit union will be subject to administrative exhaustion.  So will claims arising out of the initial wave of contract repudiations that the Board undertakes during the first few months of the liquidation process.  The only claims not subject to the administrative-exhaustion requirement are those that arise later, *after* the Board has already shut down its self-imposed deadline for claims processing.

Of course, if the Board wants more time to repudiate contracts and take other actions without having to immediately defend those actions in court, there's a simple solution:  the Board can set a longer claims-processing window.  After all, the statute says only that the Board must impose a deadline for administrative exhaustion that's "not less than 90 days" after it publishes notice to creditors.  12 U.S.C. § 1787(b)(3)(B)(i).  By setting a longer deadline, the Board can administratively process a greater volume of claims challenging its actions.

3.

This interpretation reaches a similar result as that of our sister circuits—although we get there by a different path.  Our sister circuits agree that claimants who couldn't present their claim to the Board before the published deadline—often called the "bar date"—aren't forever barred.  But those courts have required administrative exhaustion for claims that arise after the bar date.  In reaching that conclusion, our sister circuits have assumed that the Federal Credit Union Act has an additional exhaustion process that Congress never established.

Recall that the statute exempts claims from the Board's published deadline if the claimant "did not receive notice of the appointment of the liquidating agent in time to file [his] claim before such date."  *Id.* § 1787(b)(5)(C)(ii).  In interpreting a materially identical provision from FIRREA, courts have held that the text of this exception allows for late filing not only from claimants who didn't have notice of the liquidator's appointment, but also from those "whose claims do not arise until after the deadline has passed"—even if they had notice of the liquidator's appointment.  *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2003); *see also FDIC v. Scott*, 125 F.3d 254, 259 (5th Cir. 1997); *Stamm v. Paul*, 121 F.3d 635, 641 (11th Cir.

1997); *Heno v. FDIC*, 20 F.3d 1204, 1209 (1st Cir. 1994). Thus, only after presenting their late-arising claims to the Board can these claimants seek judicial review. *McCarthy*, 348 F.3d at 1081.

Of course, that's the bottom-line result we reach today—that this court may review Zai's claim. But to see why the reasoning the other circuits used to reach this result is unpersuasive, consider the First Circuit's approach in *Heno*. There, the Federal Deposit Insurance Corporation—the federal agency that administers FIRREA—argued that the statute's exception to the bar date permitted late filing "even by claimants who were on notice of FDIC's appointment but could not file their claim because it did not come into existence until after the bar date." *Heno*, 20 F.3d at 1209 (emphasis omitted). The First Circuit thought this was "far from the most natural reading" of the statutory text. *Id.* After all, the exception applies to people who "did not receive notice of the appointment of the liquidating agent"—not to people "who were on notice of" that appointment but did not yet have a claim. *Compare* 12 U.S.C. § 1787(b)(5)(C)(ii)(I), *with Heno*, 20 F.3d at 1209. That said, the First Circuit deferred to the FDIC's interpretation under the *Chevron* doctrine. *Heno*, 20 F.3d at 1209 (citing *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). Courts that followed this decision thought that deferring to the FDIC was necessary to "alleviate[] the potential internal inconsistency within the Act" that would arise if people whose claim arose after the deadline were forever barred from bringing that claim. *Stamm*, 121 F.3d at 642.

But the *Chevron* doctrine has been overruled. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Courts are now free to "exercise their independent judgment" in determining the best reading of statutory text. *Id.*; *see also Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024). So we decline to adopt what the First Circuit itself acknowledged was "far from the most natural reading" of the statute. *Heno*, 20 F.3d at 1209.

Nevertheless, we agree that the Act doesn't extinguish the claims of people—like Zai—who "were on notice of FDIC's appointment but could not file their claim because it did not come into existence until after the bar date." *Id.* (emphasis omitted); *Stamm*, 121 F.3d at 642. As discussed above, the best reading of the word "claim" is that it only refers to claims that arise before the closure of the claims-processing window established by the Board.

4.

We are unpersuaded by the potential objections to our interpretation.

*First*, the text of the jurisdiction-stripping provision.  Read in isolation, that provision seems to conflict with the result we reach:  it bars judicial review over "any claim relating to any act or omission" of "the Board as liquidating agent."  12 U.S.C. § 1787(b)(13)(D)(ii).  At first glance, this language seems to cover the universe of claims against the Board, including those that arise after the claims-processing period ends.

But we've already held that the term "claim," as used in the administrative-exhaustion provisions, applies only to claims that arise *before* the closure of the Board's claims-processing window.  It makes no sense to speak of a "claim" that doesn't yet exist.  And "similar language contained within the same section of a statute must be accorded a consistent meaning."  *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co.*, 522 U.S. 479, 501 (1998).  So, just as the word "claims" in the administrative-exhaustion context applies only to a subset of potential claims against the Board, so too in the jurisdiction-stripping provision.  Both times, "claims" refers to claims that arise before the closure of the Board's claims-processing window.  *Cf. Am. Nat'l Ins. Co.*, 642 F.3d at 1142 (recognizing that in the analogous FIRREA jurisdiction-stripping provision, "the word 'claim' is a term-of-art that refers only to claims that are resolvable through FIRREA administrative process").

Reading the administrative-exhaustion and jurisdiction-stripping provisions in tandem also makes sense as a textual matter:  the statute bars judicial review "[e]xcept as otherwise provided."  12 U.S.C. § 1787(b)(13)(D).  Of course, the exception refers to the statute's administrative-exhaustion procedures and specified avenues of judicial review.  So, the meaning we give to the exhaustion provisions can inform the meaning of the jurisdiction-stripping provision.  All to say, our reading gives full effect to the text of the statute's jurisdiction-stripping provision.

*Second*, the First Circuit's approach requiring claimants like Zai to exhaust has intuitive appeal.  Perhaps Congress wanted the Board to take the first pass at evaluating all claims.  But that's not the best reading of the statute.  The Federal Credit Union Act establishes one single

"routine claims process." *See id.* § 1787(b)(8)(A). There's no statutory text to support a second claims process for claimants who didn't have a claim arise until after the Board's processing window ended.

What's more, adopting this interpretation would create a problem. If a claimant needs to exhaust a claim that arises after the bar date, but can't do so before the bar date (given that the claim hasn't arisen), then what *is* the claimant's deadline for exhaustion? The statute never says. When courts do require exhaustion, opinions differ about the deadline that applies once a claim accrues. But none of these options is textually supportable. Courts have been forced to either choose among options at random or, worse, defer to the agency's arbitrary choice under the defunct *Chevron* doctrine. That's just one more indication that claimants like Zai don't need to administratively exhaust their late-arising claims.

Take one proposal from the FDIC in previous litigation. Whenever the Board discovers the "name and address" of a new creditor who wasn't a creditor when the Board assumed the role of liquidating agent, the Board must give notice to that creditor within 30 days. *Id.* § 1787(b)(3)(C)(ii). The FDIC has interpreted the materially identical provision of FIRREA as allowing creditors with late-accruing claims to file those claims within 90 days of receiving the mailed notice. *Carlyle Towers Condo. Ass'n v. FDIC*, 170 F.3d 301, 305 (2d Cir. 1999). But the statute didn't mandate that 90-day deadline. Presumably, the FDIC picked that number because 90 days is the minimum amount of time that the agency's published notice may specify as the deadline to file claims. 12 U.S.C. § 1821(d)(3)(B)(i); *see also id.* § 1787(b)(3)(B)(i). But nowhere does the statute say that if the Board mails a notice to a creditor whose claim arose after the bar date, that creditor gets a fresh 90-day window to exhaust.

Recognizing this lack of textual support, some litigants have argued that the only time limit governing exhaustion of claims like Zai's is the requirement that the claim must be filed "in time to permit payment" of the claim. *See Carlyle Towers* at 170 F.3d at 304 (citing FIRREA-equivalent of 12 U.S.C. § 1787(b)(5)(C)(ii)(II)). But that section applies only to creditors who lacked notice of the liquidating agent's appointment in time to file a claim that accrued *before* the closure of the bar date. *See* 12 U.S.C. § 1787(b)(5)(C)(ii). Thus, this provision doesn't address the distinct situation of claims that arise after the bar date's closure.

Ultimately, there's no principled way to pick among these options or other conceivable ones.  The statute doesn't specify a deadline for exhausting claims that arise after the bar date because it doesn't require that such claims be exhausted in the first place.

5.

What's the Board's response to all this?  The Board doesn't meaningfully engage with the statutory structure of the Federal Credit Union Act.  Nor does it engage with the caselaw that grapples with the problem of claims that arise after the close of the Board's claims-processing window.  Instead, the Board assumes that Zai was required to exhaust her claim.  And the Board says that Zai had an opportunity to do so—even though Zai's claim arose years after the Board's claims-processing window closed in August 2010.

How is that possible?  According to the Board, a few weeks after Zai filed this lawsuit, the Board mailed Zai a "discovered creditor letter."  The Board says that when it sent this letter to Zai on October 26, 2023, that triggered a re-opening of the original administrative claims window for 90 days, "as stated in the notice itself."  Appellee's Br. at 13.

But the notice doesn't open a 90-day window for the Board to consider the merits of Zai's claim.  In fact, it says the exact opposite:  the Board's letter asserts that "[t]his letter does not extend the claims waiver date" of August 8, 2010.  R. 19-2, Pg. ID 274.  Instead, the Board purported to open a 90-day window for Zai to show that she "did not receive notice of the appointment of the Liquidating Agent in time to file [her] claim before" August 8, 2010.  *Id.* (citing 12 U.S.C. § 1787(b)(5)(C)(ii)(I)).  But as the Board understands, Zai had knowledge of the liquidating agent's appointment.  Appellants' Br. at 24 (conceding that Zai "plainly had notice" of the Board's appointment).  The Board's assertion that it gave Zai an opportunity to exhaust her claim doesn't make sense, given that the Board would simply have denied that claim as time-barred.  *See* 12 U.S.C. § 1787(b)(5)(C)(i).

Ultimately, Zai wasn't required to administratively exhaust her claim, since that claim accrued after the August 8, 2010, deadline that the Board specified in its notice.

\* \* \*

We vacate the district court's judgment and remand this case for further proceedings consistent with this opinion.