CHARLES F. MAURER, JR. *vs.* E.A. GRALIA CONSTRUCTION
CO., INC., & others.[1]

No. 93-P-259

Hampden. May 17, 1994. - October 5, 1994.

Present: ARMSTRONG, KASS, & JACOBS, JJ.

*Practice, Civil,* Judgment notwithstanding verdict, New trial. *Corporation,*
Transfer of shares. *Contract,* Sale of securities. *Frauds, Statute of.*
*Uniform Commercial Code,* Statute of Frauds. *Partnership,* General
partner.

In a civil action the evidence supported the jury's findings and the judge
correctly denied the defendants' motion for judgment notwithstanding
the verdict. [405]

The Statute of Frauds found in G. L. c. 106, § 8-319, as inserted by St.
1957, c. 765, § 1, was not applicable to an agreement to issue certain
stock, where payment for the securities had been received in the form
of services rendered under an oral agreement [405-406]; alternatively,
neither that section nor the Statute of Frauds found in G. L. c. 106,
§ 1-206, was applicable to the prospective issuance of stock in the con-
text of parties' informally entering a joint venture in corporate form
that did not involve a sale of securities or personal property [406-407].

In a civil action, there was no merit to the defendants various claims that
their motion for a new trial should have been allowed. [407-408]

In a civil action, the trial judge properly calculated the measure of dam-
ages, and the evidence supported his conclusion with respect to the ac-
counting of profits of the business in issue. [408-409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 21, 1982.

The case was tried before *John F. Moriarty,* J., and a mo-
tion for a new trial was heard by him.

*Paul S. Weinberg* for the defendants.
*Thomas Lesser* for the plaintiff.

---

[1]Ernest A. Gralia, Jr., Leon Charkoudian, Eastmont Development
Corp., Pheasant Hill Village Associates, Wilbraham Commons, Inc.,
Eastmont Properties, Inc., and 120 Chestnut Street Limited Partnership.

KASS, J. At the inception of this action, counsel for the plaintiff lost sight of Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), which instructs that a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rather, the plaintiff's lawyer[2] logged in with a complaint of 173 paragraphs and twenty counts. The case is not that complicated. What the plaintiff asserts is that he had agreed with Ernest A. Gralia, Jr. (Gralia), to form a development company to act as a promoter and general partner in the building and operation of low and moderate income housing projects financed by the Massachusetts Housing Finance Agency (MHFA). In the business entity organized to perform that function, Maurer was to have a one-third interest. To effect that purpose, Gralia's lawyer drew papers forming a business corporation named Eastmont Development Corp. (Eastmont). Profits flowed into Eastmont, but Maurer complains that he saw neither shares of stock nor any money. Maurer, therefore, asks for one-third of the issued capital stock of Eastmont and an accounting of net profits earned by Eastmont.

We may safely pass over details of the gradual distillation of the twenty counts of the complaint to six by the time the case went to the jury. A judge of the Superior Court bifurcated the trial so that, in the first instance, only questions of liability were tried, with damages to be thrashed out later. The liability issues were put to the jury in the form of special questions. In condensed form, the answers of the jurors were that Gralia had promised to transfer one-third of the stock of Eastmont to Maurer in return for Maurer's "sweat equity," and that Maurer had performed his side of the bargain. After the verdict, the defendants moved for judgment notwithstanding the verdict, which the judge, with the accompaniment of a detailed and careful memorandum of decision, denied. The judge also denied the defendants' motion for a new trial. Thereafter, the parties moved on to try, jury-waived, the damages. Following entry of a final judgment,

---

[2]The lawyer who wrote and filed the complaint was not the lawyer who later tried the case and appeared on behalf of the plaintiff in the appeal.

the defendants moved to amend the findings and the judgment. That motion was also denied, and the defendants have appealed from the denials of the various posttrial motions and from the judgment itself.

Much of the defendants' brief on appeal quarrels with the jury's findings and the judge's view that the evidence supported them. That is not a promising exercise because a judge has properly denied a motion for judgment notwithstanding the verdict if, taking all the evidence in its aspect most favorable to the plaintiff, without weighing the credibility of witnesses or otherwise weighing the credibility of the evidence, the jury reasonably could return a verdict for the plaintiff. *Tosti* v. *Ayik,* 394 Mass. 482, 494 (1985). *Rubel* v. *Hayden, Harding & Buchanan, Inc.,* 15 Mass. App. Ct. 252, 254 (1983). Maurer's testimony, if no other, supports a finding that Gralia and Maurer had agreed to form a development company in which Maurer and Gralia would each have one-third interests, the remaining third to go to the lawyer who did the MHFA project work.

1. *Application of G. L. c. 106, § 8-319.* The more pointed argument that the defendants make is that if, as the jury found, there was an undertanding that Maurer was to be issued one-third of the stock of Eastmont, that agreement was unenforceable under G. L. c. 106, § 8-319, as inserted by St. 1957, c. 765, § 1,[3] which provides that "[a] contract for the sale of securities is not enforceable by way of action . . . unless: (*a*) there is some writing signed by the party against whom enforcement is sought. . . ."[4] There was no writing. Payment for the securities, however, cancels the application of the Statute of Frauds, G. L. c. 106, § 8-319(*b*), and services can constitute a payment which permits enforcement of

---

[3]Article 8 of the Uniform Commercial Code was revised and restated in its entirety by St. 1983, c. 522, § 5. The events relied on by Maurer took place in 1977 and 1978 and, therefore, the older version of the statute applies. The changes made in 1983 are not pertinent to this case.

[4]An analogous Statute of Frauds appears in G. L. c. 106, § 1-206, applicable to contracts for the sale of property over the value of $5,000. By its terms that provision does not apply to securities and refers the reader in such a case to § 8-319.

an oral promise to transfer stock. *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 92 (1987). *Fisher* v. *First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984). *Burns* v. *Gould*, 172 Conn. 210, 218 (1977). Here, the jury found that Maurer had delivered what the parties had agreed he would, namely, working out the details of housing projects. Those services, the record discloses, included: identifying project locations; securing the right to acquire project locations; applying for MHFA mortgages; processing those mortgage applications; arranging with "syndicators" to find investing limited partners; dealing with and making presentations to State and local regulatory agencies; coordination of other members of the development team (such as the architect); arranging letters of credit to secure certain undertakings with MHFA; and other management of the financing of a project. In the ordinary work of E.A. Gralia Construction Co., Inc., there would be no call for performance of duties of the sort described. They were of a development nature and not the stuff of construction contracting.

2. *Essence of the agreement not a sale of securities.* As an alternate basis for upholding the jury verdict, the judge made the cogent observation that the essence of the transaction between Maurer and Gralia was not the sale of capital stock, but a one-third share in the venture or, otherwise stated, a one-third piece of the action. Gralia would contribute to the development venture his construction know-how, Maurer his promotional and financing skills, and Mr. Philip Ryan, legal work. In return for their shares of the venture, each would forgo other compensation for their respective services. For that view there is substantial support in the record. An agreement for the sale of securities generally involves a particular quantity of identified securities — e.g., 100 shares of Xerox Corporation — but here there was, at the time the deal was struck, no nameable corporation, let alone a quantity of its stock. Whether Eastmont Development would be a partnership, a limited partnership, a trust, or a corporation was an open question when, as the jury believed on the basis

of Maurer's testimony, he and Gralia agreed that Maurer should harvest a one-third share of what, in part due to his exertions, had been sown.

Eastmont's articles of organization listed Maurer as treasurer, Gralia as president, and Mr. Ryan as clerk. Each was a director. Maurer signed significant documents on Eastmont's behalf. No stock issued, however, during the several years in which Maurer was connected with its enterprises. Some shares were finally issued to Gralia after Maurer and he had parted company. As in *Wilson v. Jennings*, 344 Mass. 608, 614 (1962), it was open for the jury and the judge to find that the parties on an informal basis "had entered into what was essentially a joint venture in corporate form." As in that case, the evidence justified the conclusion that the relationship was to be one of trust and confidence. *Id.* at 615.

As neither a security nor personal property to which title might pass is involved, neither of the Statutes of Frauds in the Uniform Commercial Code, G. L. c. 106, § 8-319 and § 1-206, which the defendants have attempted to bring into play, is pertinent.[5]

3. *Other matters.* We deal summarily with other points the defendants have raised. Points (a) through (d) were made under the general rubric that the defendants' motion for a new trial should have been allowed. See *Hartmann v. Boston Herald-Traveler Corp.*, 323 Mass. 56, 60-61 (1948) (occasions when appellate court finds an abuse of discretion in granting or refusing a new trial on the ground that a verdict is against the weight of the evidence are exceedingly rare).

(a) This is not an instance of imperfect negotiations, in which essential terms had not been agreed upon. See, e.g., *Goren v. Royal Invs. Inc.*, 25 Mass. App. Ct. 137, 140-142 (1987). The agreement found to exist was an entitlement to one-third of the wealth acquired by Eastmont. That is not an

---

[5]In their brief, the defendants did not invoke the classic Statute of Frauds which appears in G. L. c. 259, § 1, nor would that have availed them. Maurer, if his testimony was believed, as it was, performed his side of the bargain completely, thus taking the agreement out of the statute.

imponderable formula and can be applied through general accounting principles.

(b) It is altogether unlikely that the jury would have been confused by the frequent use of the pronoun "we" by Maurer when he testified. In context, it is plain enough that he referred to himself and Gralia and, sometimes, to the business. If there were doubt, it was open to the defendants to explore those doubts on cross-examination.

(c) That the judge rightly directed a verdict in favor of Leon Charkoudian did not produce a fatal variance between the complaint and the evidence; it only means the evidence failed as to a particular defendant.

(d) As to the argument that the questions put to the jury failed to conform to the theory of the complaint, it is enough to say that the defendants did not object to the charge to the jury after it was delivered and may not raise points related to it on appeal. Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).

(e) Concerning shares in profits and losses and cash flow of the partnerships in which Eastmont had a partnership position, there was evidence to support the trial judge's conclusion that Eastmont's percentage of the share of equity acquired by the general partners would be the same as the percentage of development fee payable to it as a general partner in each instance. There was no error. It also accorded with the general equity power of the court to order that Gralia amend the tax returns of Eastmont to reflect the development fee ratios. See *Nigro* v. *Conti,* 319 Mass. 480, 484 (1946); *Hallahan* v. *Haltom Corp.,* 7 Mass. App. Ct. 68, 71 (1979). Much of the value of the general parnership interests in the years in question (1978 through 1987) was in the form of losses, and Maurer could not realize that value unless the tax returns were so amended. The judge also ordered Gralia to amend his own personal tax returns to reflect the changes in the Eastmont returns. Making necessary repairs to his personal returns is a matter between Gralia and the tax authorities. It is not essential to adjudication of the

rights of the parties and is better struck. Except as modified in that detail, the judgment is affirmed.

*So ordered.*