**Kenneth V. HACHIKIAN**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as Receiver and Liquidating Agent for Bank Five for Savings and Olympic International Bank and Trust Company.**

**Civ. A. No. 94–11738–GAO.**

United States District Court,
D. Massachusetts.

Jan. 19, 1996.

W. Paul Needham, Kevin M. Hensley, Needham & Warren, Boston, MA, for Plaintiff.

Thomas R. Paxman, Federal Deposit Insurance Corporation, Boston, MA, for Defendant.

*MEMORANDUM OF DECISION*

O'TOOLE, District Judge.

The plaintiff Kenneth V. Hachikian filed this action seeking to enforce an alleged agreement to settle certain debts he owed to the Federal Deposit Insurance Corporation

("the FDIC").[1] The FDIC argues first that this Court lacks subject matter jurisdiction because Hachikian did not comply with a requirement that he submit his claim to the administrative claims review process under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821. Alternatively, the FDIC contends that the settlement agreement is unenforceable under the Massachusetts Statute of Frauds. For the reasons stated below, the Court concludes that it has subject matter jurisdiction over the action, but that the Statute of Frauds bars enforcement of the agreement.

## BACKGROUND

Hachikian had signed notes and personal guaranties with two banks, Bank Five for Savings ("Bank Five") and Olympic International Bank and Trust Company ("Olympic"). Hachikian's Olympic debt consisted of a $200,000 promissory note secured by a third mortgage on his residence; a personal guaranty of a $3 million loan; and a $115,000 promissory note. His Bank Five debt consisted of a personal guaranty of a $168,750 loan partially secured by a fourth mortgage on his home; a personal guaranty of a loan made to a realty trust; and a personal guaranty of a $100,000 loan to a real estate partnership. Both financial institutions subsequently failed. The FDIC was appointed receiver for Bank Five on September 20, 1991, and for Olympic on June 26, 1992.

Hachikian thereafter entered into negotiations with the FDIC to try to settle his debts. He alleges that on June 3, 1993, a representative of the FDIC told his lawyer in a telephone conversation that the FDIC had accepted his offer for a settlement. Hachikian claims that the terms of the settlement were set forth in a letter his lawyer sent to the FDIC the next day. Under the supposed agreement, the FDIC would discharge all of Hachikian's obligations to the FDIC, as well as any claims it had against him as a maker or guarantor of any obligations currently held by it as receiver of Bank Five or Olym-

pic, in exchange for an assignment of some stock and cash.

In October, 1993, Hachikian learned that the FDIC's position was that it had *not* agreed to a settlement. The FDIC told Hachikian that it had agreed to release the third and fourth mortgages on his residence, but only to facilitate its sale so that he could pay part of the proceeds to the FDIC. Specifically, the FDIC advised Hachikian that "the deficiency balance ... will remain open and payable in full." (Letter from Peter J. Frazier to Michael C. McLaughlin of December 21, 1993, Def's App. at 1.) Subsequently, Hachikian sold his property, and turned over approximately $103,755 to the FDIC.

By a letter dated January 19, 1994, Hachikian's lawyer urged the FDIC to reconsider its position and to discharge Hachikian's debt in its entirety as, he claimed, it had previously agreed to do. The FDIC took no action in response to the request. On August 29, 1994, Hachikian filed this action.

On December 14, 1994, Hachikian received two notices from the FDIC, each entitled "Notice to Discovered Creditor or Claimant Proof of Claim." The similarly-worded notices stated that the FDIC had discovered that Hachikian "may have a claim" against Bank Five and Olympic, respectively, and advised him to file a proof of claim. Hachikian has consistently maintained that his lawyer's January 19, 1994 letter to the FDIC constituted a proof of claim sufficient to satisfy the requirements of the administrative claims review process, and that that claim had been implicitly disallowed by the FDIC inaction as of July 20, 1994. (Under the statute, any claim not disposed of within 180 days is deemed to have been denied. 12 U.S.C. § 1821(d)(5)(A)(i).) Nonetheless, Hachikian responded to the December, 1994 claims notices by submitting proof of claim forms to the FDIC on January 5, 1995. The FDIC filed a motion to stay this suit for ninety days in order to consider Hachikian's claims in its administrative process, which was denied. Thereafter, the FDIC filed its motion for summary judgment.

---

1. The complaint contains two counts, one for declaratory judgment and the other for breach of contract. The latter prays both for specific performance and for money damages.

## DISCUSSION

### A. *Subject Matter Jurisdiction*

The FDIC initially contends that this Court lacks subject matter jurisdiction because Hachikian did not submit his claim to FIRREA's administrative claims review process before filing this action. Such a jurisdictional bar would preclude an examination of the substantive merits of this dispute.

■ Section 1821(d) generally regulates the filing, determination, and payment of claims against the assets of failed financial institutions. Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process.[2] That section specifies that, except as otherwise provided, no court shall have jurisdiction over:

> (i) any claim or action for payment from, or *any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver,* including assets which the Corporation may acquire from itself as such receiver; or

> (ii) *any claim relating to any act or omission of* such institution or *the Corporation as receiver.* (Emphasis supplied.)

"FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions...." *Marquis v. FDIC,* 965 F.2d 1148, 1151 (1st Cir.1992). Failure to participate in the administrative claims review process is a failure to exhaust administrative remedies, barring judicial review. *Id.*

■ Claims must be asserted by a certain "bar date," but the FDIC may in some circumstances consider a claim filed after that date. *See* 12 U.S.C. § 1821(d)(5)(C)(ii); *Heno v. FDIC,* 20 F.3d 1204, 1207 (1st Cir. 1994). In *Heno,* the First Circuit approved the FDIC's having permitted late filing by certain claimants whose claims had not come into existence until after the bar date had

passed. *Heno,* 20 F.3d at 1209. For Bank Five and Olympic the original bar dates were December 24, 1991 and March 18, 1993, respectively. Hachikian's claim arose from the agreement he says was reached in June, 1993. Under the FDIC's interpretation of the administrative claims review process, his claim could and should still have been submitted to the FDIC for administrative review.

Hachikian did not file a formal proof of claim before commencing this suit, but he contends that he did in fact present his claim in detail to the FDIC by his January 19, 1994 letter. He maintains that the letter provided the FDIC with a sufficient indication of the substance and nature of his claim, made a specific request for action, and gave the FDIC ample time to consider his claim.

In *Heno,* Heno had a claim which did not become assertable until after the bar date. Like Hachikian, Heno did not file the usual proof of claim forms, but instead submitted letters on two occasions requesting action by the FDIC. Having received no response, Heno filed suit. The FDIC initially contended that Heno's failure to submit a proof of claim form meant that the claim had not been administratively exhausted and that the district court lacked subject matter jurisdiction. The FDIC later conceded that Heno's letters had placed it on notice of the existence of his claims, and admitted that it had erred by failing to follow its own internal manual procedures. The Court of Appeals concluded that Heno's letter requests for action were "tantamount to administrative review under FDIC's internal manual procedures" and that the district court had jurisdiction to review Heno's claims. *Heno,* 20 F.3d at 1209–10.

In this case, similarly, the January, 1994 letter can be deemed a proof of claim, and Hachikian thus properly filed suit when, after 180 days, it was denied by inaction. Alternately, if the letter is read simply as a request for action, the FDIC should have been alerted to the existence of a claim, and its failure to send Hachikian a claims notice

---

**2.** The administrative claims review process is intended to provide a streamlined method for resolving the bulk of claims against failed financial institutions in a prompt and orderly fashion. *Marquis v. FDIC,* 965 F.2d 1148, 1152 (1st Cir. 1992).

within thirty days amounted to an administrative error for which Hachikian should not be penalized. *Heno*, 20 F.3d at 1209–10. Moreover, when the FDIC did send claims notices to Hachikian in December, 1994, he promptly responded by submitting formal proofs of claim. In sum, it is apparent that Hachikian did his best to comply with the FDIC's administrative requirements, and it should be judged that his case is properly before the Court. The FDIC's motion to dismiss for want of subject matter jurisdiction must therefore be denied.

## B. *Statute of Frauds*

Hachikian contends that there was an oral agreement between his attorney and the FDIC's representative for the complete discharge of his debt. Even assuming that to have been the case, the Statute of Frauds bars enforcement of such an agreement.

The contract Hachikian seeks to enforce involves an interest in real property—the third and fourth mortgages on his home. To be enforceable, it must satisfy the requirements of the Statute of Frauds. *See Schwanbeck v. Federal–Mogul Corp.*, 412 Mass. 703, 592 N.E.2d 1289, 1293 (1992). The Statute of Frauds provides:

> No action shall be brought ... [u]pon a contract for the sale of lands, ... or of any interest in or concerning them ... [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged....

Mass.Gen.L. ch. 259, § 1 (1992).

An oral agreement, such as the one alleged, to release a mortgage interest falls within the statute and is unenforceable. *Duff v. United States Trust Co.*, 327 Mass. 17, 97 N.E.2d 189, 191 (1951); *Montuori v. Bailen*, 290 Mass. 72, 194 N.E. 714, 715 (1935). Thus, to prevail in this case, Hachikian would need to show a signed writing by the FDIC "containing the terms of that same oral contract in so far as he seeks to enforce them." *Fichera v. Lawrence*, 312 Mass. 287, 44 N.E.2d 779, 780 (1942). Hachikian points to no written promise, contract, agreement, memorandum or note created by the FDIC setting forth the terms he seeks to enforce.

In his brief, Hachikian maintains that the FDIC's eventual decision to discharge the two mortgages it held on his property should be regarded as part performance of the settlement agreement, making the agreement enforceable notwithstanding the absence of a writing. The FDIC's discharge of the mortgages was accompanied, however, by the stipulation that such discharges constituted "only a release of collateral and the deficiency balance owing ... will remain open and payable in full." (Frazier letter at 1.) These circumstances cannot plausibly be understood as evidence proving a broader agreement to discharge Hachikian's debts in full. In the end, all that Hachikian can point to is the June, 1993 conversation between his lawyer and the FDIC as evidence of an agreement for the discharge of his debts. This conversation cannot constitute an enforceable contract as a matter of law.

Accordingly, the FDIC's motion for summary judgment is ALLOWED. This action is DISMISSED.

IT IS SO ORDERED.