914 F.Supp. 734 (1996)
In re Jeffrey D. FURST, Debtor.
Jeffrey A. KITAEFF, as he is the Bankruptcy Trustee for the ESTATE OF Jeffrey D. FURST, Plaintiff,
v.
Larry JOHNSON a/k/a Maurice Starr, Defendant.
James MARTORANO, Plaintiff,
v.
Larry JOHNSON a/k/a Maurice Starr, Defendant.
Civil Action No. 94-11871. Bankruptcy No. 90-10567. Adv. Nos. 90-1372, 91-1674.
United States District Court, D. Massachusetts.
February 16, 1996.
*735 *736 Lewis P. Aronson, Ravech, Aronson & Shuman, Boston, MA, Juliane Balliro, Balliro, Mondano & Balliro, Boston, MA, Michael P. Pagnozzi, Ravech & Shuman, Boston, MA, for Jeffrey A. Kitaeff.
Edward T. Dangel, III, Alexander T. Bok, Dangel & deBenedictis, Boston, MA, Paul J. Haley, Law Office of Paul J. Haley, Hillsborough, NH, Joseph Hernandez, Dangel & Fine, Boston, MA, for James Martorano.
Eugene F. Sullivan, DiMento & Sullivan, Boston, MA, for Jeffrey D. Furst.
Gordon P. Katz, Sherburne, Powers & Needham, Boston, MA, Jay Fialkov, Wolf, Greenfield & Sacks, Boston, MA, Stephanie S. Lovell, Fitch & Tourse, P.C., Boston, MA, Steven H. Wright, Chin, Wright & Branson, P.C., Boston, MA, for Larry Johnson.

MEMORANDUM AND ORDER
YOUNG, District Judge.
Jeffrey Kitaeff ("Kitaeff"), as trustee of the bankruptcy estate of Jeffrey Furst ("Furst"), brought the first of these two actions in the Bankruptcy Court for the District of Massachusetts claiming that Larry Johnson, a/k/a Maurice Starr ("Starr"), was a debtor to Furst pursuant to an alleged joint venture agreement between the parties. The second action was brought by James Martorano against Starr on much the same grounds, Martorano claiming to be a co-venturer with Furst.[1] As there is no dispute but that Furst and Martorano are co-venturers, the Bankruptcy Court consolidated the two actions and, when the parties sought a jury trial on this contract issue, referred to this Court the question whether a valid agreement existed between the parties pursuant to which Starr was to share with Furst and Martorano the profits arising from Starr's promotion of the New Kids On The Block music group (hereinafter the "New Kids"). Kitaeff v. Johnson, Civ. A. No. 94-11871-WGY.
This Court empanelled a jury which, after the issues were duly tried, returned a verdict for Furst and Martorano. Considering the evidence in the light most favorable to the jury's verdict, it demonstrates that on or about October 13, 1988, Furst arranged for a loan of $175,000 to Starr secured by property that was worth substantially less than the amount of the loan. The loan was arranged through Chestnut Hill Investments, a company owned by Furst and Boston attorney Jack Zalkind. Furst personally guaranteed payment of the loan to Zalkind, while James Martorano contributed one third of the loan proceeds to the transaction. The purpose of the loan was to obtain $125,000 to pay off debts related to property owned by Starr, leaving a balance of $50,000 to promote the New Kids. Furst received an interest payment of 20% from Starr in advance, and Starr repaid the loan on October 13, 1989, as agreed.
Furst claimed that, in a side agreement to this loan contract, he and Starr had, on or about October 13, 1988, also entered into a joint venture agreement to promote the New Kids. In return for his efforts to procure the $175,000 loan and his efforts to promote the New Kids,[2] Furst contended that Starr agreed to provide Furst and Martorano with 50% of the profits earned by Starr from the New Kids, money which these two co-venturers were to divide evenly.[3]
*737 The jury found in favor of Furst, and held that the parties had entered into such an oral joint venture agreement and that Furst was to receive a percentage of the monies paid to Starr by the New Kids.[4]
Starr now brings this motion pursuant to Fed.R.Civ.P. 50 for judgment notwithstanding the jury's verdict, asserting, inter alia, that the oral joint venture agreement is unenforceable under two separate provisions of the Massachusetts Statute of Frauds.[5] Starr argues the agreement represents an unwritten conveyance of intangible property and, alternatively, that it cannot be performed within one year.

I. DISCUSSION

A. Royalty Rights and Intangible Property Under Mass.Gen.L. ch. 106, § 1-206.
Starr first claims that the transaction is an unwritten agreement to transfer a royalty right to Furst and thus constitutes an invalid conveyance of intangible property under Mass.Gen.L. ch. 106, § 1-206.[6]
The Statute of Frauds codified at section 1-206 applies to the joint venture agreement if it can be shown that Starr conveyed to Furst a royalty right, which is considered a negotiable general intangible property under Massachusetts law. See Mass.Gen.Laws Ann. ch. 106, § 1-206 (West 1990) (Uniform Commercial Code Comment). Starr contends that Furst's interest in a percentage of the sums received by Starr from the New Kids amounts to a claim that Starr effectively conveyed a royalty right to Furst. Massachusetts statutory and case law are instructive as to precisely what kind of interest  royalty right or otherwise  Furst possessed.
Section 1-206 prohibits the enforcement of a contract for the sale of property by way of action or defense beyond $5,000 unless it is made in writing, reasonably identifies the subject matter, and is signed by the party to be charged. Mass.Gen.Laws Ann. ch. 106, § 1-206 (West 1990). The purpose of section 1-206, according to the UCC comment appended to the statute, is to fill the gap left by the Statute of Frauds provisions governing goods, securities, and security interests. The Comment indicates that the principal gap relates to the sale of "general intangibles" defined in Mass.Gen.L. ch. 106, § 9-106, such as the "sale of bilateral contracts, royalty rights or the like." (Mass.Gen.Laws Ann. ch. 106, § 1-206 (West 1990) (Uniform Commercial Code comment) (emphasis added)). Other examples include goodwill, literary rights, rights to performance, copyrights, trademarks, and patents. UCC Comment, Mass. Gen.Laws Ann. ch. 106, § 9-106 (West 1990).
The Massachusetts Appeals Court has held that a joint venture agreement is, in essence, a transaction for a percentage share in a venture, or a "percentage of the piece of the action," and thus is not personal property under section 1-206. Maurer v. Gralia Const. Co., Inc., 37 Mass.App.Ct. 403, 407, *738 640 N.E.2d 484, rev. denied, 419 Mass. 1102, 644 N.E.2d 225 (1994). In Maurer, the Appeals Court held that three partners who each owned a one-third share in a housing construction venture by which the plaintiff contributed construction know-how, the defendant promotional and financing skills, and a third partner legal skills did not constitute a sale of securities governed by the UCC, but rather a percentage share in a joint venture. In addition, since neither a security nor personal property to which title might pass were involved, the UCC Statute of Frauds was held not to apply.
Given the jury's verdict, which found Furst, Martorano, and Starr to have been joint venturers, Maurer controls here. As in Maurer, Starr, Furst, and Martorano formed an oral partnership to pursue a venture in which both Furst and Martorano agreed to forgo compensation in return for shares in the venture. Furst procured funding from Martorano and provided promotional support, while Starr provided promotional and other music industry skills. While Furst testified that he expected to receive a percentage of Starr's earnings from the New Kids' royalties, this is hardly the sale of a royalty interest by Starr to Furst. Starr offered no evidence to show that royalty rights were discussed, negotiated, or conveyed as part of the joint venture agreement. The joint venture agreement is analogous to the profit-sharing venture in Maurer, and thus not subject to the Statute of Frauds under section 1-206.

B. Agreements Less Than One Year as Governed by Mass.Gen.L. ch. 259, § 1(5).
In addition, Starr claims that the agreement is unenforceable because it could not have been performed within one year as required by the Statute of Frauds. See Mass.Gen.Laws Ann. ch. 259, § 1 (West 1995). The common-law Statute of Frauds, including the "one year rule," is well established within Massachusetts statutory law and is binding upon federal courts within the District of Massachusetts. See Hachikian v. Federal Deposit Insurance Corporation, 914 F.Supp. 14 (D.Mass.1996) (applying Massachusetts Statute of Frauds to invalidate a purported oral agreement transferring an interest in real property). Starr argues that any royalty payments made to him by the New Kids could not, by the intrinsic nature of royalty payments in the music recording business, be fully performed within twelve months. Thus, by derivation, any payment of a share of profits to Furst and Martorano could not be made within one year. Id.
Under Massachusetts law, the Statute of Frauds invalidates an oral joint venture agreement if it can be shown that the agreement "is not to be performed within one year from the making thereof." Mass. Gen.Laws Ann. ch. 259, § 1(5) (West 1995). Massachusetts decisional law, however, makes clear that this provision applies only to contracts which, by their terms, cannot be performed within a year. It does not apply to those contracts which may be performed within a year but may also extend beyond that year. Doherty v. Doherty Insurance Agency, Inc., 878 F.2d 546, 552 (1st Cir.1989) (quoting Rowland v. Hackel, 243 Mass. 160, 162, 137 N.E. 265 [1922]). Any understanding that a contract was not to be performed within one year must be "absolute and certain, and not to depend on any contingency." See Joseph Martin, Inc. v. McNulty, 300 Mass. 573, 577, 16 N.E.2d 4 (1938) (quoting Peters v. Westborough, 19 Pick. 364, 367, 36 Mass. 364, 367 [1837]); see also Whelan v. Intergraph Corp., 889 F.Supp. 15, 17 (D.Mass.1995) (citations omitted). For an oral contract to come within the Statute of Frauds  and be voided by it  the parties must either expressly stipulate, or it must appear to have been understood by them, that the contract was not to be performed within a year. See Novel Iron Works v. Wexler Construction Co., 26 Mass.App.Ct. 401, 410, 528 N.E.2d 142, further review denied, 403 Mass. 1104, 530 N.E.2d 797 (1988). Massachusetts courts look to the terms of the contract as a reflection of the parties' understanding at the time of agreement to determine whether the agreement could have been performed within one year of its making. See e.g., Richard Tucker Associates, Inc. v. Smith, 395 Mass. 648, 650, 481 N.E.2d 489 (1985).
*739 Starr argues that the Statute of Frauds renders the joint venture unenforceable because Furst, as reflected by his testimony, expected that his percentage earnings were tied to royalty payments that Starr would receive from the New Kids and, Starr asserts, "such monies ... cannot be fully earned, accounted for and paid during one year." Starr's Motion for Directed Verdict at 6-7. In his motion, Starr cites a number of cases from other jurisdictions to support this contention. Whether contracts calling for royalty payments generally can, or cannot, by their terms, be performed within one year has no direct bearing on the issue before this Court. Here, there is no evidence that the obligation to pay Furst a percentage of the sums payable to Starr from the New Kids is specifically tied to the New Kids' royalty earnings. In fact, there is no evidence in the record, nor has Starr offered any post-trial, as to the actual source or terms of Starr's earnings from the New Kids. Even if the parties understood that payment to Starr depended on the New Kids' royalties, the record does not indicate that Starr's earnings from such royalty payments could not theoretically be fully paid within one year. Any hope or likelihood that Starr's earnings might extend beyond one year does not bring the agreement within the Statute of Frauds since it does not exclude the possibility that performance could be completed within one year. Here, there was no absolute and certain understanding or express stipulation between Furst, Martorano, and Starr that their agreement was not to be performed within one year. Starr has simply failed to demonstrate that the payment to Furst and Martorano of a percentage of Starr's earnings from the New Kids could not have been fully performed within one year.

II. CONCLUSION

For the foregoing reasons, this Court concludes that there is here no basis under either of the two provisions of the Massachusetts Statute of Frauds discussed herein to invalidate the oral agreement the jury found to have existed between Furst, Martorano, and Starr. Starr's motion to set aside the jury finding as matter of law is, therefore, DENIED.
NOTES
[1] Martorano is well known to this Court. See United States v. Martorano, 457 F.Supp. 803 (D.Mass.1978).
[2] Furst claimed that he "supplied personnel and limousine services to the group and contributed his considerable musical talent" as well. (Plaintiff Jeffrey Kitaeff's Pre-trial Memorandum, at 3.)
[3] It is one of the sad ironies of this case that, while Furst and Starr fiercely dispute the division of the spoils to be made from the New Kids, and recount with verve how, during the glory days, the then-Governor of Massachusetts paid them homage during "New Kids On The Block Day," neither they (nor any of the other witnesses) now have much good to say about these young people as a singing group. Instead, the New Kids were portrayed at trial as a bunch of lip-synching, girl-chasing, third rate vocalists  and this would appear to be the judgment of history. See Michael Sanders, How New Kids Reached the End of Their Road: Behind the Breakup of a Boston Band, Boston Globe, June 9, 1994, available in WESTLAW, Doc. No. 1994 WL5995344. But, oh, could they make money while the fad lasted. Counsel bandy about sums in excess of $500,000,000.00 earned by the group from 1990 to 1992.
[4] The jury responded "yes" to the following question: "Did Maurice Starr enter into an enforceable joint venture agreement with Jeffrey D. Furst and James Martorano, one aspect of which was the payment to Mr. Furst and Mr. Martorano of a percentage of the sums payable to Mr. Starr from the singing group New Kids on the Block?"
[5] In Starr's original motion he argued that the oral joint venture agreement was not enforceable under the following theories: the Massachusetts Parol Evidence Rule, codified at Mass.Gen.L. ch. 106, § 2-202; the federal Truth in Lending Act, codified at 15 U.S.C. §§ 1637(a) and 1638; the Massachusetts criminal usury law, codified at Mass.Gen.L. ch. 271, § 49; and the Massachusetts Statute of Frauds. This Court denied Starr's motion on each of the first three grounds at a motion hearing held on November 30, 1995. The Court took the Statute of Frauds issue under advisement.
[6] Massachusetts, like most other states, has incorporated the Uniform Commercial Code ("UCC") into its statutory law. Section 1-206 covers the sale of personal property not covered by other provisions of the UCC such as futures contracts and royalties.