T.C. Memo. 2009-219

UNITED STATES TAX COURT

ERNEST A. GRALIA, JR., AND ROSE M. GRALIA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19075-06.                    Filed September 21, 2009.

Peter L. Banis, for petitioners.

Nina P. Ching, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  By notice of deficiency (the notice),
respondent determined deficiencies of $163,475 and $62,572 in
petitioners' Federal income tax for taxable (calendar) years 1996
and 2001, respectively.

Unless otherwise stated, section references are to the
Internal Revenue Code in effect for the years in issue and Rule
references are to the Tax Court Rules of Practice and Procedure.

The parties submitted this case fully stipulated under Rule 122. The stipulated facts are so found, and the stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

Respondent has conceded one issue; we must decide only whether (1) petitioners' deduction of a $600,000 settlement (the settlement) is a miscellaneous itemized deduction and (2) petitioners may deduct $15,217 in related legal fees (the legal fees).[1]  Petitioners bear the burden of proof.  See Rule 142(a).[2]

## Background

Petitioners are husband and wife who made joint returns of income for the years in issue.  At the time they filed the petition, they resided in Florida.

---

[1]Respondent made other adjustments in the notice that are purely computational and that we need not discuss further.

[2]Sec. 7491(a)(1) provides that, if a taxpayer offers credible evidence with respect to an issue, the burden of proof with respect to the issue is on the Commissioner.  See also Rule 142(a)(2).  Sec. 7491(a)(1) applies only if the taxpayer complies with the relevant substantiation requirements in the Internal Revenue Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2)(A) and (B). The taxpayer bears the burden of proving compliance with the conditions of sec. 7491(a)(2)(A) and (B).  E.g., Ruckriegel v. Commissioner, T.C. Memo. 2006-78.  Petitioners neither propose facts to support their compliance with the conditions of sec. 7491(a)(2)(A) and (B) nor argue that respondent bears the burden of proof on any issue because of sec. 7491(a)(1).  We therefore conclude that sec. 7491(a)(1) does not apply to this case.

Petitioner's Business

Ernest A. Gralia, Jr. (petitioner), was a general contractor involved in the construction of residential and commercial buildings and was the owner and principal officer of an S corporation, E.A. Gralia Construction Co. (Gralia Construction). Charles F. Maurer, Jr. (Mr. Maurer), was the son of the owner of a site development business, which petitioner sometimes hired as a subcontractor on construction projects. In 1972, when Mr. Maurer graduated from high school, petitioner hired him as a laborer. In 1973, petitioner asked Mr. Maurer if he would like to work in the company office instead of the field, and Mr. Maurer accepted. Over the next few years, as Mr. Maurer began his college education in business and finance, petitioner increasingly depended on him to manage the office.

Eastmont and the Partnerships

In 1975, petitioner became interested in undertaking government-subsidized housing projects. In late 1975, two men asked petitioner to quote a price for the construction of a proposed subsidized project, Pheasant Hill Village. The two men were the sole general partners of Pheasant Hill Village Associates (Pheasant Hill). In February 1978, petitioner acquired a 55-percent general partnership interest in Pheasant Hill (thereby replacing one of the general partners) and became managing general partner of that partnership. One month later, petitioner's lawyer formed Eastmont Development Corp. (Eastmont). Petitioner was its president, Mr. Maurer its treasurer, and

petitioner's lawyer its clerk.  The same men were its three directors.  Petitioner transferred a 45-percent general partnership interest in Pheasant Hill to Eastmont, and Eastmont replaced petitioner as managing general partner.  Eastmont issued stock to petitioner and to no one else.  Mr. Maurer understood himself to be entitled to one-third of Eastmont's stock.

Petitioner became involved in three other partnerships (together with Pheasant Hill, the partnerships).  In the first two partnerships, petitioner and Eastmont (or its wholly owned subsidiary) were general partners.  In the third partnership, 120 Chestnut Street Limited Partnership (Chestnut House), petitioner was both general partner and a limited partner.

In September 1981, Mr. Maurer left his positions at Gralia Construction and Eastmont.  At that time, he asked petitioner for his share of Eastmont's stock.  Petitioner demurred.

The State Court Case

In April 1982, Mr. Maurer commenced a civil action against petitioner and others in the Superior Court of Hampden County, Massachusetts (the State court case and the superior court, respectively).  Among other things, Mr. Maurer sought to recover his share of Eastmont's stock and any associated dividends or other benefits.  The superior court bifurcated the action, addressing liability first and damages second.  In February 1988, the superior court issued a "Memorandum" (the first State court ruling), holding that Mr. Maurer was a one-third owner of Eastmont.  In December 1988, the superior court issued its

"Findings, Rulings and Order for Judgment" (the second State court ruling; together with the first State court ruling, the State court rulings). The superior court prefaced its discussion with its understanding of the nature of Mr. Maurer's claims:

> This is not a stockholders' derivative action in which the plaintiff seeks damages on behalf of the corporation for monies improperly expended by it. In this case[,] the plaintiff is seeking to recover his proportionate share of monies or other benefits which * * * [petitioner] may have taken from the corporation in the nature of dividends. He is seeking to enforce the fiduciary duty which * * * [petitioner], as majority shareholder, owed to him as minority shareholder (as defined in Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 328 N.E.2d 505 [(1975)]), rather than recompense for any loss alleged to have been caused to the corporation by * * * [petitioner's] actions. See Bessette v. Bessette, 385 Mass. 806, 434 N.E.2d 206 (1982). The effort, therefore, was to identify those payments or direct benefits which * * * [petitioner] had received from Eastmont Development Corporation since its formation.

The superior court found, among other facts, that petitioner had been improperly claiming Eastmont's share of the partnership losses.

> [Petitioner] apparently has used his position of control to usurp a much larger proportion of the equity ownership than that to which he is entitled. On the record before me it is not possible to right the wrong that has been done to Eastmont except by ordering * * * [petitioner] to amend his tax returns for the years in question to reflect the true division of ownership.

The superior court also ordered petitioner to pay Mr. Maurer approximately $12,000 for causing Eastmont to pay the premiums on petitioner's life insurance policy. Petitioner appealed, and, in

October 1994, the Massachusetts Appeals Court (the appeals court) affirmed most of the State court rulings.[3]

The District Court Case

In November 1996, Mr. Maurer commenced a civil action against petitioner and others in the U.S. District Court for the District of Massachusetts (the District Court case and the District Court, respectively). Mr. Maurer amended his complaint three times,[4] and, for purposes of this case, we consider only the Third Amended Complaint and Jury Demand (the third amended complaint). In January 2001, Mr. Maurer agreed to the dismissal of his action against the defendants in the District Court case in return for $600,000.

A single law firm represented the defendants in the District Court case. That law firm billed "The Gralia Group" for its services, and, in 2001, Gralia Construction paid the law firm $15,217 (i.e., the legal fees).

Petitioners' Returns

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for 2001. They attached thereto a Schedule C, Profit or Loss From Business, which showed petitioner as the proprietor of a business described as "CONSULTING-DIRECTOR". On that Schedule C, petitioners claimed deductions for the settlement and the

---

[3]The appeals court vacated that part of the second State court ruling that required petitioner to amend his personal income tax returns.

[4]Although Mr. Maurer lodged a fourth amended complaint, the case was settled before the District Court ruled on his motion for leave to file a fourth amended complaint.

legal fees, which caused them to have a net loss on Schedule C of $615,217.  In October 2002, petitioners filed Form 1045, Application for Tentative Refund, claiming a carryback net operating loss for 1996 as a result of the Schedule C loss claimed on their 2001 Form 1040.  In November 2003, petitioners filed Forms 1040X, Amended U.S. Individual Income Tax Return, for 1996 and 2001.

The Notice

In an attachment to the notice, respondent set forth his adjustments giving rise to the deficiencies in issue.  He explained that he was disallowing the deduction for the settlement on the ground that the settlement was not "an ordinary and necessary business expense as per Section 162 of the Internal Revenue Code."  He explained that he was disallowing the deduction for the legal fees on the ground, among others, that petitioner had not paid them.  The disallowance of the carryback to 1996 followed from the disallowance of deductions for the settlement and the legal fees.

## Discussion

### I.  Respondent's Concession

On brief, respondent concedes:  "[P]etitioners are entitled to deduct the * * * [settlement] on Schedule A of their 2001 return as a miscellaneous expense subject to the limitations under I.R.C. § 67."  Specifically, respondent concedes that petitioners may deduct the settlement as either an employee business expense under section 162(a) or an expense related to

petitioner's investment in Eastmont under section 212(2). Respondent's concession, however, does not help petitioners much; because of the alternative minimum tax, any miscellaneous itemized deduction will have only a limited effect (if any) on petitioners' tax liabilities.[5]  See sec. 56(a)(4), (b)(1)(A)(i), (d).

## II. Miscellaneous Itemized Deductions

### A. Introduction

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Section 212(2) allows a deduction for certain expenses related to investments; i.e., expenses "for the management, conservation, or maintenance of property held for the production of income".  Most section 162(a) expenses related to the performance of services as an employee and section 212(2) expenses related to stock ownership are deductible only as itemized deductions.  Here, if the settlement

---

[5]Petitioners apparently accept respondent's concession that they may deduct the settlement under sec. 162(a); we assume they do so because that is the section they argue applies.  They object, however, to respondent's concession under sec. 212(2), asserting that they are "surprised and prejudiced by this new and confusing claim".  Even if respondent's concession were a new matter raised on brief, however, that would not make it an "impermissible * * * argument", as petitioners assert; rather, respondent would simply bear the burden of proving it.  See Rule 142(a)(1).  Yet petitioners do not seek to shift the burden of proof, which is understandable, since respondent has conceded something to petitioners--i.e., that they do have a ground for deducting the settlement (something respondent denied altogether in the notice).  A deduction under sec. 212(2) may not be the concession petitioners would have liked, but it is a concession, nonetheless.

is such an employment- or shareholder-related expense, then it is a "miscellaneous itemized deduction". See sec. 67(b).

B.  Respondent's Argument

Respondent argues that petitioner paid the settlement neither in connection with his trade or business as a self-employed consultant nor in connection with his trade or business as a real estate developer. Rather, respondent argues, petitioner paid the settlement in connection with either his employment by Eastmont or his status as an Eastmont shareholder. According to respondent, in both cases the result is the same: Petitioners may deduct the settlement only as a miscellaneous itemized deduction under section 67.

Respondent also denies that petitioner himself paid the legal fees, asserting that petitioner's lawyers issued bills to "the Gralia Group", i.e., all the defendants in the District Court case, and that Gralia Construction paid those bills.

C.  Petitioners' Argument

Petitioners assert that Mr. Maurer's claims in the District Court case were "against * * * [petitioner] directly for * * * business opportunities * * * [petitioner] personally" usurped from Eastmont. Petitioners argue that petitioner settled a claim against himself as a real estate developer and not any claim against himself as a mere officer or shareholder of a real estate developer. First, petitioners argue that, because in the State court case Mr. Maurer did not make any derivative claim as a shareholder of Eastmont, "res judicata" (claim preclusion) barred

him in the District Court case from making any similar claim. Second, petitioners argue that Mr. Maurer's claim for his share of the "benefits of stock ownership in Eastmont" fails to state a "damage claim" because Eastmont never made any dividends, profits, or distributions. Because Mr. Maurer made only those two claims, petitioners argue that, to understand the reason petitioner settled, we must look through the stated claims to "determine the essence of Mauer's [sic] claim". Petitioners find "the true substance of Mauer's [sic] claim" in paragraph 39 of the third amended complaint: "[Petitioner] has ignored the corporate form, [and] engaged in self-dealing by usurping corporate opportunities rightfully belonging to Eastmont". According to petitioners, "There is no money in the claims of Mauer [sic] against * * * [petitioner] other than those which can be traced to the Partnership Equity." Thus, the claim petitioner settled for $600,000 was a claim against himself personally for "the benefits", i.e. "partnership equity", petitioner "obtained at Mauer's [sic] expense".

Petitioners assert that, although Gralia Construction paid the legal fees in 2001, Gralia Construction issued petitioner a Schedule K-1, Shareholder's Share of Income, Credits, Deductions, etc., causing petitioners to report as income the legal fees Gralia Construction paid on petitioner's behalf.

D. Analysis

    1. The Settlement

We agree with respondent that petitioner has failed to show that he paid the settlement in connection with his trade or business as a real estate developer.

In effect, petitioners argue that, although Mr. Maurer failed to state a valid claim in the District Court case, petitioner settled because Mr. Maurer could have made a valid claim.[6] Petitioners suggest that, because of the "laxity of notice pleading," petitioner did not bother to move for summary judgment, but rather, after almost two decades of litigation, preemptively settled. The plausibility of their argument notwithstanding, petitioners have failed to show that Mr. Maurer had any claim against petitioner personally other than to enforce the fiduciary duty that the superior court had concluded that petitioner, as a majority shareholder, owed to Mr. Maurer, as a minority shareholder.[7]

---

[6]We note that the allegation in which petitioners find the "true substance" of Mr. Maurer's claim, i.e., that petitioner "engaged in self-dealing by usurping corporate opportunities rightfully belonging to Eastmont", is a classic ground for a derivative claim. See, e.g., Farber v. Servan Land Co., 662 F.2d 371 (5th Cir. 1981) (holding that the corporation was entitled to profits defendant stockholders made by improperly seizing a corporate opportunity).

[7]We have set forth supra the relevant part of the second State court ruling in which the superior court, in defining petitioner's duty to Mr. Maurer, cited Donahue v. Rodd Electrotype Co. of New England, 328 N.E.2d 505 (Mass. 1975). In that case, the Supreme Judicial Court of Massachusetts treated the plaintiff's complaint, although in part presenting a derivative action, as "in substance" one "presenting a proper
(continued...)

Petitioners argue the following: (1) Petitioner usurped corporate opportunities of Eastmont; (2) Mr. Maurer, in his own right, had a claim to those corporate opportunities; therefore, (3) petitioner settled the claim with Mr. Maurer. Petitioners imply that, because petitioner improperly took corporate opportunities in which Mr. Mauer had a right to participate (and petitioner personally profited therefrom), Mr. Maurer, for that reason, and for no other reason, had a direct claim against petitioner. Petitioners are mistaken.

To prove that Mr. Maurer had a claim against petitioner personally for the usurpation of joint opportunities, petitioners must show that Mr. Maurer was personally entitled to participate in the "usurped" corporate opportunities. Petitioners must show that Mr. Maurer and petitioner were partners or coadventurers and that petitioner took for himself something belonging to the joint venture. See generally Meinhard v. Salmon, 164 N.E. 545 (N.Y. 1928). That is, petitioners must show that Mr. Maurer had a claim that did not derive from his one-third ownership of Eastmont. Except obliquely, petitioners do not even suggest Mr. Maurer had any right to participate in the partnerships. Petitioners come closest to making that averment in the conclusion of their reply brief: Petitioner and Mr. Maurer "specifically contemplated partnership equity ownership in their names". Petitioners, however, offer no evidence that Mr. Maurer

[7](...continued)
cause of suit in the personal right of the plaintiff." Id. at 508 n.4.

had any right to participate in the partnerships (or any other "usurped" corporate opportunities, which petitioners fail to specify) except through Eastmont.

In conclusion, petitioners have failed to show that Mr. Maurer was entitled to recover against petitioner personally on a claim of usurpation of any joint opportunity. They have failed to show that petitioner settled any claim other than a claim Mr. Maurer had as a one-third owner of Eastmont. On the evidence considered so far, they have failed to show that the settlement was deductible as other than an employment-related section 162(a) expense or a shareholder-related section 212(2) expense; they have therefore failed to show that it is deductible as other than a miscellaneous itemized deduction.

2.  The Legal Fees

Although petitioners assert that they reported as income the legal fees Gralia Construction paid on petitioner's behalf, they have failed to satisfy their burden of proof. Petitioners have provided no Schedule K-1 received from Gralia Construction, and the Schedule E, Supplemental Income and Loss, attached to their 2001 Form 1040, reports only a loss from Gralia Construction. Although Schedule B, Interest and Ordinary Dividends, reports a $15,365 ordinary dividend from Gralia Construction, petitioners have failed to establish any connection between the legal fees and that ordinary dividend ($148 more than the legal fees). Nevertheless, on brief, respondent appears to concede that

petitioners may deduct the legal fees as a miscellaneous itemized deduction. We accept that concession and so hold.

E. Conclusion

On the evidence considered so far, petitioners may deduct the settlement and the legal fees only as miscellaneous itemized deductions.

III. The Claim of Right Doctrine and Section 1341(a)

A. Introduction

Petitioners make an alternative argument with respect to the settlement that avoids its classification as a miscellaneous itemized deduction. They argue that they may deduct the settlement under section 1341(a)(4) as the restoration of an amount received under a so-called claim of right. Section 67(b)(9) excludes from the definition of "miscellaneous itemized deductions" "the deduction under section 1341".

B. Section 1341

Section 1341(a) addresses the computation of tax where a taxpayer restores a substantial amount held under a claim of right. In pertinent part, section 1341 provides:

> SEC. 1341(a). General Rule.--If--
>
> (1) an item was included in gross income for a prior taxable year * * * because it appeared that the taxpayer had an unrestricted right to such item;
>
> (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year * * * that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

> (3) the amount of such deduction exceeds $3,000,

then the tax imposed * * * [shall be the lesser of the tax computed with such deduction, sec. 1341(a)(4), or the tax for the year without the deduction reduced by the amount the taxes were increased in the year of receipt because the item in dispute was included in gross income, sec. 1341(a)(5)].

C.  Respondent's Argument

With respect to the settlement, respondent concedes that petitioners satisfy the requirements in paragraphs (2) and (3) of section 1341(a); i.e., respondent concedes that petitioners may deduct the settlement and that the deduction exceeds $3,000. Respondent contends only that petitioners have failed to prove that they included any item in gross income for a prior taxable year because it appeared that they had an unrestricted right to that item. Respondent argues that petitioners have not provided "any explanation or evidence to support that they reported items of income under a claim of right." Respondent disputes that petitioners could have "reasonably believed that they had an unrestricted right to income" from the partnerships after October 5, 1994, when the appeals court entered its order affirming the holding of the superior court that Mr. Maurer was entitled to a one-third interest in Eastmont.[8]

D.  Petitioners' Argument

Petitioners argue that they "can and do demonstrate the necessary income inclusion, and income inclusion in an amount

---

[8]Further appellate review was denied Nov. 28, 1994.  See Maurer v. E.A. Gralia Constr. Co., 644 N.E.2d 225 (Mass. 1994).

sufficient to dispose of this matter, by two taxable years, * * * 1995 and 1997." Petitioners then detail the income they reported from the partnerships in those years, dividing the total by 3 to reflect the value of the one-third interest in the "overall 'partnership'" between petitioner and Mr. Maurer that petitioners allege the superior court found. Because one-third of the income petitioners included from the partnerships in those years exceeds the settlement, petitioners claim they have demonstrated that they included in a prior year an item of income corresponding to the settlement.[9] For that reason, petitioners assert they have "satisfied the * * * three requirements" of section 1341(a).

E. <u>Analysis</u>

We agree with respondent. Even if we agreed with petitioners that they have shown they included in gross income items corresponding to the settlement (which we do not[10]),

_____

[9]Petitioners advance that argument in their opening brief. In their reply brief, petitioners argue that considering only the income they reported from Chestnut House, "some quick math", i.e., dividing that reported income by 3, "gets you pretty close to $600,000".

[10]Petitioners' simple division by 3 of the income they reported from the partnerships in 1995 and 1997 does not accurately reflect the amount to which Mr. Maurer was entitled as a one-third owner of Eastmont. Petitioners state that the superior court granted Mr. Maurer a one-third interest in an "overall 'partnership'" between him and petitioner. Yet that manifestly is not what the State court rulings hold. Petitioner was a general partner of the partnerships; Mr. Maurer was not and was not entitled to be. Mr. Maurer participated in three partnerships only indirectly through Eastmont and did not participate in Chestnut House at all. Mr. Maurer thus had no claim whatsoever to any Chestnut House profits. (For that reason alone, petitioners' second argument, see <u>supra</u> note 9, has no merit.) The problem for petitioners is that the lion's share of
(continued...)

petitioners have nonetheless failed to explain how they could have reasonably believed they had an unrestricted right to income from the partnerships after the conclusion of the State court case. Petitioners have failed to satisfy their burden of proof with respect to section 1341(a)(1).

Section 1.1341-1(a)(2), Income Tax Regs., provides in part: "For the purpose of this section 'income included under a claim of right' means an item included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item". Petitioners assert that in 1995 and 1997, they included in gross income items from the partnerships under a claim of right. Yet petitioners do not explain how they could have reasonably

---

[10](...continued)
the income from the partnerships was the result of the sale of Chestnut House in 1997. Indeed, that sale was the source of more than 92 percent of the income petitioners reported from the partnerships in 1995 and 1997. Thus, petitioners' arithmetic is not an accurate (or even a rough) estimate of the amount to which Mr. Maurer was entitled. We assume petitioners rely on 1995 and 1997 to make their argument because in few (if any) other years did they receive such large amounts of income. According to the appeals court: "Much of the value of the general partnership interests in the years in question (1978 through 1987) was in the form of losses". Maurer v. E.A. Gralia Constr. Co., 640 N.E.2d 484, 488 (Mass. App. Ct. 1994). Although those losses had real value (and could by themselves have been grounds for the settlement), a settlement for deductions improperly claimed can never qualify for the tax benefits of sec. 1341(a). Further, petitioner likely had many reasons for settling the case; indeed, to save himself the costs and fees associated with another trial, petitioner may well have agreed to pay Mr. Maurer more than he was strictly entitled to receive. In short, petitioners have failed to show that the settlement represented anything other than the value of losses improperly deducted and litigation costs and attorney's fees saved. Petitioners thus have failed to show that they included in gross income items corresponding to the settlement.

believed, in the light of all the facts available in those years, that they had an unrestricted right to those items. Indeed, petitioners undermine their own argument. If, as they argue, the superior court granted Mr. Maurer a one-third interest in an "overall 'partnership'" between petitioner and Mr. Maurer, then petitioners knowingly misappropriated the items they claim are associated with the settlement. Petitioners are thus not entitled to the tax benefits of section 1341(a). See, e.g., Kraft v. United States, 991 F.2d 292, 299 (6th Cir. 1993) ("Furthermore, 26 U.S.C. § 1341 does not apply to a taxpayer who has embezzled or otherwise knowingly misappropriated funds which he is later required to return because the taxpayer never had an unrestricted right to the money so obtained.").

F. Conclusion

With respect to the settlement, petitioners are not entitled to the tax benefits of section 1341(a). Section 67(b)(9) therefore does not apply.

IV. Conclusion

Petitioners may deduct the settlement and the legal fees only as miscellaneous itemized deductions.

Decision will be entered under Rule 155.